**George F. REIDY, Toni E. Reidy, Terrence M. Reidy, John A. Reidy, Brian J. Reidy, and George M. Reidy, Plaintiffs,**

v.

**The TRAVELERS INSURANCE CO., Defendant.**

**Civil Action No. 91–40154–NMG.**

United States District Court,
D. Massachusetts.

June 3, 1996.

---

Frederick T. Golder, Bernstein, Golder & Miller, Lynnfield, MA, for Plaintiffs.

Jay M. Presser, Audrey Samit, Skoler, Abbott & Presser, Springfield, MA, for Defendant.

### MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is defendant's motion for summary judgment on all counts. For the reasons set forth below, the motion will be allowed.

## I. BACKGROUND

This Court summarizes the evidence in the light most favorable to the plaintiffs and resolves in their favor all reasonable inferences that could be drawn from that evidence.

Plaintiff, George F. Reidy ("Reidy"), was born on July 20, 1941. In August, 1967, he began working for defendant, Travelers Insurance Co. ("Travelers"), as an outside claims representative. He was soon promoted to assistant supervisor of the Personal Injury Payments Unit and placed under the direction of James Smith.

In 1973, as a result of his strong work performance, Reidy was promoted to unit head/supervisor of the Subrogation Unit and continued to report to Smith. Beginning in the mid–1970s, the relationship between Reidy and Smith deteriorated, based in part on Smith's allegations of poor work performance by Reidy. Although Reidy does not remember specific details, he admits that Smith may have questioned him about not working enough hours, taking extended coffee breaks and excessive socializing while on company time. Plaintiffs' Local Rule 56.1 Statement at ¶ 4. In 1978, Smith threatened to place Reidy on probation but dropped his threat when Reidy indicated that he would pursue legal action.

In 1983, Travelers consolidated its Worcester and Springfield offices and Reidy began to experience a substantial increase in his workload. It was around this time that Reidy began demonstrating the first signs of illness, including sleeping difficulties, depression and memory loss.

In the fall of 1985, Smith left the company and was replaced by John Honore. Reidy and Honore started out with a good working relationship. Reidy mentioned to Honore some of the problems that he saw within the

unit, such as understaffing, large caseloads and computer problems. When Honore did not take any action to correct these problems, Reidy began to feel "that Honore might be out to get him" and "that Honore was perpetuating the treatment that Smith had started." Plaintiffs' Local Rule 56.1 Statement at ¶ 10. Reidy alleges that "Honore would have let the entire unit fail in order to establish a basis for discharging Reidy." *Id.* Reidy also alleges that age was a factor in Honore's treatment of him because Reidy saw that several older employees "had been forced to retire due to the Company's age discrimination and excessive demands." *Id.* Although Reidy continued to receive good job evaluations, he felt that these evaluations were "part of [a] smoke screen" so that Reidy would not realize that Honore was planning "to lower the boom" on him. *Id.;* Reidy Deposition, Vol. II at 100.

At some point, Honore reviewed Reidy's files and noticed that Reidy had allowed the statute of limitations to run on some of his files. Honore also told Reidy that he thought Reidy was taking extended lunches and coffee breaks and making too many personal phone calls while at work. Reidy admits that these conversations took place, although he does not recall exactly when they occurred. Plaintiffs' Local Rule 56.1 Statement at ¶ 11. Reidy denies, however, that he committed the underlying behavior of which he was accused. *Id.*

In late August, 1987, plaintiff was reassigned to defendant's Auto Damage Unit to work as a claims representative. Technically, this was a demotion. Plaintiff however retained his title and pay level from the Subrogation Unit. Reidy was told that he had been transferred for several reasons, including tardiness, missing the statute of limitations on several workers' compensation cases, long lunches and coffee breaks, taking too much time reading the daily newspaper during work hours, failure to handle subrogation cases in a timely and diligent manner, and excessive personal phone calls. Memorandum from Honore to Reidy dated August 26, 1987.

In the Auto Damage Unit, plaintiff worked for Assistant Manager Harold Miller and Supervisor Terry Stachura. At first, Reidy did not believe that Miller and Stachura "were out to get him." Plaintiffs' Local Rule 56.1 Statement at ¶ 13. Eventually, however, Reidy began to notice that Miller and Stachura would not help him or cooperate with him. *Id.;* Reidy Deposition, Vol. II at 116.

In February, 1988, Reidy was told by Stachura that there was a problem with his backlog of files. Plaintiff subsequently met with Honore and Miller about his slowness in learning new materials. Plaintiff now alleges that this slowness of learning was one of the early signs of his health problems, although he was not aware of it at that time.

On June 1, 1988, plaintiff was informed by Honore that failure to improve his performance within 60 days would result in a final warning. That warning came on August 17, 1988, when plaintiff was told that failure to improve his performance within 60 days would result in termination.

Reidy took a vacation in late August, 1988. On August 30, 1988, Reidy was scheduled to report for work but did not. Instead, he called the following day and told defendant that he was not well and would not be in for the rest of the week. On September 6, 1988, Reidy called and reported that he still was not well. Plaintiff requested, and received, a medical leave of absence due to stress, which he claimed was a result of his excessive workload and the constant harassment he faced from defendant's agents.

Reidy also filed for and obtained disability payments pursuant to defendant's Sick Leave Plan. Under the terms of that Plan, an employee had to be "completely unable, because of injury or sickness, to be at work and perform the material duties of [his/her] occupation" in order to receive sick leave benefits. The Plan further provided that such an employee would no longer be considered disabled "if [he were] able to come back to work at The Travelers or if [he worked] elsewhere for wage or profit." Planned Protection at 64.

Sometime in 1989, Reidy alleges that he contacted the defendant's Employee Benefits Agent, Joan Lawson, to find out whether he could obtain paid employment while receiving

disability benefits from the company. Plaintiff claims that he was told that he could work elsewhere so long as he did not earn more than he was collecting under the Plan. On August 1, 1989, plaintiff began working as a courier for A & S Delivery, earning $7.25 per hour.

In September, 1989, defendant arranged for Reidy to receive an independent medical examination from Dr. Roy Parenty at defendant's expense. Plaintiff informed Dr. Parenty of his courier job and believed that Dr. Parenty was defendant's agent and would therefore inform defendant of his job.

In a letter dated November 5, 1990, defendant's company physician, Dr. Herbert Felsenfeld, advised Reidy that his treating physician, Dr. Mario Moretti, had indicated that he would be able to return to work in a light duty capacity. Dr. Felsenfeld informed Reidy that he would be expected to return to work at Travelers on November 19, 1990.

Reidy informed defendant that he was not capable of returning to his former two positions at the company because they were too stressful. Reidy instead asked for a position as a courier or filer. At that time, Reidy was aware that the company had courier positions in Hartford and was willing to work in the Hartford office as such. Reidy also informed Jeanne Erickson of the company's Corporate Human Resources Department that Travelers would have to develop guidelines for a job that Dr. Moretti could approve.

On December 4, 1990, Dr. Felsenfeld proposed a light duty job description that was intended to eliminate as much stress as possible and enable Reidy to return to work. Under that proposal, Reidy would have returned to his former position as a claims representative in the Subrogation Unit, where he would be given a 25% reduction in workload and would not have to deal directly with customers. By letter dated December 17, 1990, Dr. Moretti informed defendant that plaintiff would not be able to assume that proposed position. Plaintiff claims that, at that time, he was still experiencing severe headaches, memory loss and depression.

On February 14, 1991, defendant informed Reidy that it had just recently learned of his courier job with A & S and that, pursuant to the terms of its Sick Leave Plan, Reidy would no longer be considered disabled for purposes of receiving sick leave benefits because he was working elsewhere for wages. Plaintiff was told that he would be placed on unpaid leave as of March 4, 1991, but that his position at Travelers would remain open for four weeks. If plaintiff did not return to work within that time, defendant would assume that plaintiff had terminated his employment.

By letter dated March 12, 1991, Travelers informed plaintiff that his sick leave benefits would be extended for two weeks until March 25, 1991. Plaintiff was also informed that his unpaid leave would now commence as of that new date and extend for four weeks. If Reidy failed to return to work at the end of that period, he would be considered terminated.

On April 13, 1991, plaintiff requested an extension of his unpaid leave until June 1, 1991, which defendant granted. When plaintiff did not report for work by the latter date, he was terminated. After his termination, Reidy claims that he began to deteriorate emotionally and, as a result, was forced to leave his courier position sometime in August or September, 1991. Reidy has not worked since that time.

In November, 1992, Reidy began seeing Dr. Leo Polizoti for his stress related medical problems. Dr. Polizoti characterized plaintiff's condition as permanent burnout and stated that plaintiff was "not able to work" and would have "a very difficult time functioning at a 'normal' level" even in his personal life. Dr. Polizoti further stated that plaintiff's disability appeared to be permanent at that time. Medical Report of Dr. Polizoti dated March 2, 1993.

## II. PROCEDURAL HISTORY

On or about August 30, 1991, plaintiff claims that he mailed a "Charge of Discrimination" to the Massachusetts Commission Against Discrimination ("MCAD"), alleging age and handicap discrimination in violation of M.G.L. c. 151B and c. 93, § 103. In the cover letter which accompanied that Charge, plaintiff requested that a withdrawal form be

sent to him after Travelers filed its position statement so that plaintiff could file a claim in court.

By a letter dated September 20, 1991, the MCAD informed plaintiff that it could not act upon his allegations of discrimination until he filed a formal complaint. In order to facilitate that procedure, the MCAD officer informed Reidy that he would have to meet with a representative of the agency to discuss further his situation. On September 26, 1991, plaintiff sent a letter to the MCAD in which he asked for a copy of Travelers' position statement and again requested a withdrawal form so that a private lawsuit could be brought. There was no further correspondence between plaintiff and the MCAD.

On or around October 7, 1991, Reidy filed a Complaint in the Massachusetts Superior Court, Worcester Division, alleging breach of contract, age discrimination in violation of M.G.L. c. 151B, handicap discrimination in violation of M.G.L. c. 93, § 103. The Complaint also contained a claim by Reidy's wife, Toni, for loss of consortium, and four separate claims for loss of nurture by each of Reidy's four minor children, Terrence, John, Brian and George. Defendant filed a notice of removal to this Court on November 1, 1991 on the grounds of diversity jurisdiction. On July 20, 1995, defendant filed the instant motion for summary judgment.

On or around October 10, 1991, plaintiff also filed a claim for workers' compensation pursuant to M.G.L. c. 152, §§ 34, 35. That claim was initially denied and plaintiff appealed. Three hearings were subsequently held before Administrative Law Judge Dianne L. Solomon of the Department of Industrial Accidents. On May 25, 1995, Judge Solomon found that plaintiff's emotional condition rendered him "incapacitated for any gainful employment." Decision of the Administrative Law Judge of the Department of Industrial Accidents at 14. Judge Solomon also found plaintiff's "incapacity to be total" with the exception of the 19 month period when he worked for A & S. *Id.* at 18. Plaintiff was awarded, and continues to receive, workers' compensation benefits.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. *Standard of Review*

■ Summary judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most favorable to the plaintiffs and indulge all reasonable inferences in their favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

■ The moving party bears the burden of showing that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce,* 904 F.2d 740, 742 (1st Cir.1990). If the movant does so, the burden then shifts to the non-moving party to establish affirmatively the existence of a genuine material issue of fact. *Id.* In deciding whether a factual dispute is genuine, this Court determines whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant's assertion of mere allegations or its denial of the pleadings is insufficient, without more, to establish a genuine issue of material fact. Fed.R.Civ.P. 56(e).

### B. *Legal Analysis*

#### 1. *Breach of Contract*

■ In Count I, plaintiff Reidy alleges that Travelers breached the terms of his employment contract with the company. Although the specific grounds for this breach of contract claim are not entirely clear from the Complaint, this Court is mindful of its duty to draw all reasonable inferences from the pleadings in favor of the plaintiff. Based upon that standard of review, this Court infers that plaintiff has alleged a breach of contract claim based upon a) breach of an express or implied employment agreement

and b) unlawful termination on the basis of plaintiff's age and/or handicap.[1]

### a. Breach of Express/Implied Employment Agreement

With respect to plaintiff's first ground for relief, plaintiff does not produce any evidence of a written employment agreement. Instead, he argues that there were "implied or expressed policies, procedures, or practices" that employees of Travelers would be treated fairly and terminated only for just cause. Complaint at ¶ 45. Because defendant terminated plaintiff "in violation of those implied or expressed terms", plaintiff claims that defendant prevented him "from performing the terms and conditions of his employment contract with Travelers." Id. at ¶¶ 46, 47.

Plaintiff relies upon 1) an employee manual and 2) his 23 year "tenure" with the company to argue that he had an implied employment agreement with the defendant. This Court is not persuaded by either argument.

First, in order to determine whether the terms of an employer's personnel manual can constitute a binding contract under Massachusetts law, this Court considers the following factors: whether the manual's terms were i) unilaterally modifiable, ii) merely hortatory, iii) negotiated in a particular instance, iv) specially emphasized by the employer, v) seasonably accepted by the employee, and vi) characterizable as specifying some period of employment (or, alternatively, some definitive limit on the otherwise fluid nature of at-

will employment). Pearson v. John Hancock Mut. Life Ins. Co., 979 F.2d 254, 256 (1st Cir.1992); Jackson v. Action for Boston Community Development, 403 Mass. 8, 14–15, 525 N.E.2d 411 (1988).

Plaintiff has submitted no evidence relating to any of these factors. Indeed, the employee handbook specifically provided that both employee and employer were free to terminate an employee's employment "at any time, for any or for no reason, and with or without advance notice." The Travelers Employee Handbook at 15. This Court therefore concludes that no reasonable jury could find that an implied contract was formed based upon the employee handbook.

Second, plaintiff argues that an "implied contract preventing an unjust dismissal may also be created when the employee's length of service is considered." Plaintiffs' Memorandum in Opposition at 4. Because Reidy had worked for Travelers for over 20 years, he claims that he had a "reasonable expectation" that, due to his tenure with the company, "the Company would follow the procedures of fundamental fairness" if it ever terminated him. Id. at 5.

In support of that argument, plaintiff cites one Massachusetts case, McKinney v. National Dairy Council, 491 F.Supp. 1108 (D.Mass.1980), which held that, where the New York Statute of Frauds prevented enforceability of an employment contract, ter-

---

1. In its memorandum in support of its motion for summary judgment, defendant addresses, and argues for the dismissal of, plaintiff's claim for breach of contract based upon the defendant's termination of plaintiff's disability benefits. Specifically, defendant argues that any such claim is preempted by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a), which states that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now and hereafter relate to any employee benefit plan...." Plaintiff, in turn, responds that, because the discontinuance of his disability benefits is evidence of discrimination towards him, his claim for loss of benefits is only "peripheral" to the ERISA plan and thus does not sufficiently "relate to" an employee benefit plan so as to warrant ERISA preemption.

This Court need not address the merits of these arguments because plaintiff's Complaint can not reasonably be read to include a claim for breach of contract claim based upon the termination of Reidy's sick leave benefits. At most, plaintiff alleges in paragraph 50 of his Complaint that "his disability benefits ceased on June 1, 1991." In the following paragraph, plaintiff states, in reference to the sum of the 50 paragraphs preceding it, that "[t]his count is for breach of employment contract." Without more, this Court will not read into the Complaint a claim seeking relief for the termination of Reidy's sick leave benefits. Where a plaintiff has not spelled out his theories of relief clearly and distinctly in his Complaint, this Court is not obliged to infer all potential alternative grounds for relief. See Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 183 (1st Cir.1989); Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988).

mination of an at-will employee on the basis of his age after 19 years of service was actionable as a violation of the implied obligation of good faith and fair dealing. *Id.* at 1122. A "compelling" factor in that decision was the fact that, when plaintiff first began working for his employer, he had clearly and explicitly indicated that he was looking for what would be the last job in his working career. *Id.* Plaintiff Reidy, by contrast, has not presented any evidence that would support a finding of an implied employment contract based on his tenure with Travelers. He relies simply upon the fact that he always received "above average appraisals and steady promotions until the discriminatory behavior commenced." Plaintiffs' Memorandum in Opposition at 5. This Court concludes that no reasonable jury could conclude that an implied contract was formed based upon Reidy's years of service at the company.

### b. *Unlawful discrimination*

■ Plaintiff's second ground for relief on his breach of employment contract claim is based upon his allegation that he was wrongfully terminated on the basis of his age and/or handicap. Complaint at ¶¶ 21–25, 40–43, 47. Massachusetts courts have made clear that where the legislature has already provided a comprehensive remedial statute such as M.G.L. c. 151B, the state's discrimination in employment statute, Massachusetts courts will not create a new common law action based upon the public policy expressed in that statute. *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 585, 631 N.E.2d 555 (1994) (adopting the analysis and conclusion of *Melley v. Gillette Corp.*, 19 Mass.App.Ct. 511, 513, 475 N.E.2d 1227 (1985)). To the extent that Reidy's common law claim for breach of contract is based upon Traveler's allegedly discriminatory employment practices, it is preempted by M.G.L. c. 151B.

Defendant's motion for summary judgment on Count I will, therefore, be ALLOWED.

### 2. *Violation of M.G.L. c. 151B*

■ In Count II, Reidy alleges that Travelers and its duly authorized agents and employees intentionally "engaged in a pattern or practice of discriminating against older employees by forcing them out" through harassment and the creation of a stressful environment. Complaint at ¶¶ 54, 55. This claim for age discrimination in violation of M.G.L. c. 151B in Count II is accompanied by a separate claim for handicap discrimination in violation of M.G.L. c. 93, § 103 in Count III. Because M.G.L. c. 151B is the exclusive state law remedy for employment discrimination complaints, it preempts claims brought under M.G.L. c. 93, § 103. *See Woods v. Friction Materials, Inc.*, 30 F.3d 255, 264 (1st Cir.1994). The defendant's motion for summary judgment on Count III will, therefore, be ALLOWED.

In his brief, plaintiff argues both of his claims for age and handicap discrimination under Chapter 151B. *See* Plaintiffs' Memorandum in Opposition at 15–18. Although a strict reading of his Complaint would bar any claim for handicap discrimination under Chapter 151B because it was not properly pleaded, this Court will extend plaintiff the benefit of the doubt and analyze both his age and handicap discrimination claims under that statute.

### a. *Failure to follow administrative procedures*

Defendant argues that plaintiff's discrimination claim should be dismissed because Reidy failed to follow proper administrative procedures with the MCAD prior to filing suit in this Court.

■ Under Massachusetts caselaw, it is clear that a plaintiff alleging employment discrimination has "two largely independent avenues for redress … one through the MCAD … and the other in the courts." *Christo v. Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817, 525 N.E.2d 643 (1988). A plaintiff "may maintain a civil action only if [he] has previously filed a timely complaint with the [MCAD] and ninety days have passed (or a commissioner has assented [in writing] to an earlier filing)." *Id.* at 816, 525 N.E.2d 643; M.G.L. c. 151B, § 9. A plaintiff may not otherwise resort to the courts for a discrimination claim that is within the jurisdiction of the MCAD unless

he has followed these procedures. *See Charland*, 417 Mass. at 583–584, 631 N.E.2d 555.

In this case, plaintiff has presented evidence which, if credited, would show that:

1) by letter dated August 30, 1991, his attorney asked the MCAD to file an enclosed Charge of Discrimination on plaintiff's behalf and to send a withdrawal form so that plaintiff could file a private civil lawsuit.

2) by letter dated September 20, 1991, an officer of the MCAD wrote to plaintiff directly and informed him that he would have to file a formal complaint with the agency before the MCAD could act on it. The officer also informed plaintiff that an MCAD representative would need to meet with him to discuss further his situation before an investigation could proceed.

3) by letter dated September 26, 1991, plaintiff's attorney again asked the MCAD for a withdrawal form so that plaintiff could bring a private lawsuit.

Plaintiff has presented no evidence of any other correspondence with the MCAD but contends that the above letters indicate that a timely charge of discrimination was indeed filed.

The MCAD, however, has no record of the filing of that charge. *See* Deposition of Alan Cassella at 18–19; letter from Nancy L. Barnes to Jay M. Presser dated May 4, 1992; *see also* Affidavit of Robert L. Sanders. Plaintiff responds that the MCAD must have lost his charge and argues that he should not be prejudiced by such an administrative error. Plaintiff thus asks this Court to use its equitable powers to permit the instant lawsuit to proceed.

■ For the purposes of this summary judgment motion, this Court is required to draw all reasonable inferences in favor of the plaintiff and therefore assumes that he did indeed file his charge with the MCAD on August 30, 1991. Nevertheless, the fact remains that plaintiff did not wait 90 days before filing the instant lawsuit in Massachusetts Superior Court on October 7, 1991. Nor has plaintiff submitted any evidence of a withdrawal letter from the MCAD which would have allowed him to seek earlier relief in the courts. Therefore, this Court concludes that, as a matter of law, plaintiff failed to follow the proper administrative procedures for filing his employment discrimination claims. On that ground alone, defendant's motion for summary judgment on Count II will be ALLOWED.

### b. *Plaintiff's Substantive Claims*

Notwithstanding plaintiff's failure to follow those required administrative procedures and for the sake of completeness, this Court will consider plaintiff's substantive claims for age and handicap discrimination.

■ Plaintiff alleges that, in terminating his employment on June 1, 1991, defendant unlawfully discriminated against him on the basis of his age and handicap. In examining a claim for age and/or handicap discrimination under Chapter 151B where there is no direct evidence of such discrimination, the Court applies the three-stage burden-shifting framework followed by Massachusetts courts, as recently clarified by the Supreme Judicial Court of Massachusetts in *Blare v. Husky Injection Molding Systems Boston, Inc.*, 419 Mass. 437, 646 N.E.2d 111 (1995).

■ At the first stage of the analysis, plaintiff must establish a prima facie case of employment discrimination. If he carries that burden, it will be presumed that defendant engaged in age and/or handicap discrimination. *Blare*, 419 Mass. at 441, 646 N.E.2d 111. The burden then shifts to the defendant to rebut that presumption by articulating a legitimate, non-discriminatory reason for its action. *Id.* If defendant successfully does so, the presumption of discrimination created by the prima facie case drops from the case and the burden shifts back to plaintiff to show that defendant's articulated justification is not true but a pretext. *Id.* at 443, 646 N.E.2d 111. Unlike the burden required under the federal antidiscrimination statute, a plaintiff alleging a violation of M.G.L. c. 151B need not present evidence of defendant's alleged discriminatory animus to survive defendant's motion for summary judgment. *Id.*

### i. *Age Discrimination*

Under M.G.L. c. 151B, § 4, "[i]t shall be an unlawful practice ... [f]or an employer in the private sector, by himself or his agent, because of the age of any individual, ... to discharge from employment such individual ..." In order to establish a prima facie case of age discrimination, plaintiff must produce evidence that 1) he is older than 40 years old, 2) he performed his job at an acceptable level, 3) he was terminated, and 4) defendant sought to fill plaintiff's position by hiring another individual with qualifications similar to his. *Blare,* 419 Mass. at 441, 646 N.E.2d 111.

Plaintiff was born on July 20, 1941 and was 49 years old at the time of the alleged discriminatory act of termination. Elements one and three of the prima facie case have thus been met.

With respect to the second element of the prima facie case, plaintiff alleges that he was promoted at various points during his career due to strong work performance. Plaintiffs' Local Rule 56.1 Statement at ¶¶ 2–3. Plaintiff further alleges that he always received above average annual appraisals. Complaint at ¶ 11. Plaintiff admits that he allowed the statute of limitations to run on several files for which he was responsible and that he was often reprimanded for long and excessive coffee breaks, lunches and personal telephone calls. Plaintiff's burden is not, however, onerous at this preliminary stage of the analysis. *See Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995) (discussing plaintiff's burden in the context of the federal Age Discrimination in Employment Act). This Court therefore assumes that plaintiff's job performance was acceptable.

Plaintiff has not, however, submitted any evidence to support the fourth element of the prima facie case, that is, that Travelers sought to replace Reidy with an employee with similar qualifications. Rather, plaintiff merely states that he "believes" that he was replaced by a younger person. Complaint at ¶ 56. Mere allegations that he was so replaced, without more, are insufficient to establish a prima facie case of age discrimina-

tion. Based upon that deficiency alone, plaintiff's substantive claim of age discrimination fails without this Court having to reach the second or third stage of the burden-shifting framework.

Had plaintiff succeeded in establishing a prima facie case of age discrimination, the burden would have then shifted to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. In this case, Travelers produced evidence that it 1) terminated the plaintiff's disability benefits and placed him on unpaid leave because plaintiff was found to have been working as a paid courier for A & S Delivery, contrary to the terms of the company's disability plan, and 2) terminated the plaintiff's employment only after affording him repeated opportunities to return to his former position with a reduction in workload. *See* Letters from Jeanne Erickson to Reidy dated February 14, 1991, March 12, 1991 and March 28, 1991. Based upon that credible evidence, this Court concludes that Travelers would have met its burden of providing lawful reasons for its employment decision.

The burden would then have shifted back to the plaintiff to show "either that the employer's reason was a pretext or that the actual reason for the adverse hiring decision was discrimination" in order to survive defendant's motion for summary judgment. *Blare,* 419 Mass. at 445, 646 N.E.2d 111. Plaintiff presented no evidence in that regard. Aside from mere allegations in his Complaint that defendant "engaged in a pattern or practice [of] discriminating against older workers by increasing their workload beyond their ability to perform it successfully" for the express purpose "of forcing them to quit", *see* Complaint at ¶¶ 24, 25, plaintiff neither set forth any specific facts nor presented any evidence to show that 1) the defendant's articulated reason was more likely than not a pretext for actual discrimination, or 2) the actual motivation for Travelers' actions was discrimination.

For all the reasons stated herein, the defendant's motion for summary judgment on

plaintiff's age discrimination claim will, therefore, be ALLOWED.

### ii. Handicap Discrimination

M.G.L. c. 151B, § 4 also provides that "[i]t shall be an unlawful practice . . .

> [f]or any employer, personally or through an agent, to dismiss from employment . . . or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business."

 In order to establish a prima facie case of handicap discrimination in employment under Chapter 151B, plaintiff must produce evidence showing that 1) he is a handicapped person, 2) in spite of his handicap, he is qualified for the position from which he was terminated, and 3) he was fired solely because of his handicap. *Garrity v. United Airlines, Inc.*, 421 Mass. 55, 60, 653 N.E.2d 173 (1995).

 With respect to the first element, plaintiff is "handicapped" within the meaning of the statute if he a) has a physical or mental impairment which substantially limits one or more major life activities, such as learning and working; b) has a record of having such impairment; or c) is regarded as having such impairment. M.G.L. c. 151B, §§ 1(17), 1(20). Reidy has submitted medical reports that indicate that he suffered, and continues to suffer, from mental impairments which substantially limit his ability to work. *See* Letter from Dr. Moretti to Travelers dated December 17, 1990; letter from Dr. Weiss to Joseph E. McGuire, Esq. dated December 10, 1991. The Court concludes that plaintiff has established the first element of his prima facie case.

 In order to establish the second element, plaintiff must show that, despite his handicap, he was qualified for the position from which he was terminated. Section 1(16) of Chapter 151B defines a "qualified handicapped person" as "a handicapped person

who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap." An employer may, however, refuse to accommodate any handicap that necessitates the substantial modification of employment standards. *Beal v. Board of Selectmen of Hingham*, 419 Mass. 535, 542, 646 N.E.2d 131 (1995).

Plaintiff concedes that he was incapable of performing his previous job as a claims representative in the Auto Damage Unit after 1988, even with a 25% reduction in workload. Plaintiffs' Memorandum in Opposition at 7. Plaintiff, in fact, applied for and received disability benefits because he was unable to perform the material duties pertaining to his position. Nevertheless, Reidy contends that he was a "qualified handicapped person" because he was able to perform the job duties of a courier or filer during the relevant time period. Because Travelers did not offer him such a position, Reidy alleges that Travelers failed to provide reasonable accommodation to his handicap as required under state law. *Id.*

 The Court is not persuaded by plaintiff's reasoning. By plaintiff's own admission, he was not, at any time between the day he left his position at Travelers to the present, capable of performing the duties of a claims representative. The question then is whether or not there is at least a genuine issue of material fact that, if Travelers made reasonable accommodation to Reidy's handicap, he would have been able to perform that job. *See August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir.1992). Plaintiff basically argues that he would have been able to perform the essential job functions of a claims representative if defendant had offered him a position as a courier or filer. That argument is without logic. Furthermore, while employers may not deny an employee alternative employment opportunities that are reasonably available under the employer's existing policies, employers "are not required to find another job for an employee who is not qualified for the job he or she was doing. . . ." *School Bd. of Nassau County v.*

*Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987). Because plaintiff in this case admits that he could not perform any of the functions of a claims representative, regardless of accommodation, the Court concludes that plaintiff has failed to show that he was "qualified" for the position from which he was discharged.

Even if plaintiff had shown that he was a qualified handicapped person, he has not submitted any evidence that he was terminated solely because of his handicap, the third element of the prima facie case. To the contrary, plaintiff concedes that he could not have returned to his prior position because of his handicap.

For the reasons stated in this section as well as those stated above, the defendant's motion for summary judgment on plaintiff's handicap discrimination claim will, therefore, be ALLOWED.

3. *Loss of Consortium and Loss of Nurture*

▮ The claims for loss of consortium by Reidy's wife and loss of nurture by Reidy's minor children are based upon the handicap discrimination claim in Count III. *See* Complaint at ¶¶ 71–84. Because the handicap discrimination claim will be dismissed, the loss of consortium and loss of nurture claims must also be dismissed. Furthermore, with respect to the former claim, under Massachusetts law, a loss of consortium claim can only be brought when a claimant's spouse has a valid tort claim. *Sena v. Commonwealth,* 417 Mass. 250, 264, 629 N.E.2d 986 (1994); *Mouradian v. General Elec. Co.,* 23 Mass. App.Ct. 538, 544, 503 N.E.2d 1318 (1987). There is no such tort claim in this case.

Defendant's motion for summary judgment on Counts IV, V, VI, VII and VIII will, therefore, be ALLOWED.

**ORDER**

For the foregoing reasons, defendant's motion for summary judgment on all counts is ALLOWED.

So Ordered.