**Deborah D. MYRICK, Plaintiff,**

v.

**GTE MAIN STREET INC. and James H. Hall, Jr., Defendants.**

**No. 99–CV–10505–MEL.**

United States District Court,
D. Massachusetts.

Oct. 28, 1999.

Patricia M. Flannery, Thornton, Early & Naumes LLP, Boston, MA, Celina Gerbic, Thornton, Early & Naumes, LLP, Boston, MA, for Deborah D. Myrick, plaintiff.

Arthur G. Telegen, Pamela B. Blatte, Foley, Hoag & Eliot, Boston, MA, for GTE Main Street Inc., defendant.

Arthur G. Telegen, Pamela B. Blatte, Foley, Hoag & Eliot, Boston, MA, Jay M. Presser, Skoler, Abbott & Presser, Springfield, MA, for James H. Hall, Jr., defendant.

*MEMORANDUM AND DECISION*

LASKER, District Judge.

Deborah D. Myrick worked for GTE Main Street Inc. as a marketing consultant. Her supervisor at GTE was James H. Hall. Myrick alleges that Hall sexually harassed her through his "use of offensive sexual language and behavior" in violation of M.G.L. ch. 214, § 1C. Based on Hall's alleged conduct, Myrick also asserts claims against GTE and Hall respectively for; M.G.L. ch. 151B sex discrimination; M.G.L. ch. 214, § 1C and 151B retaliation; intentional and negligent infliction of emotional distress; negligent hiring, retention, and supervision; and interference with contractual relations. GTE and Hall both move to compel arbitration. GTE also moves pursuant to Rule 15(a) of the Fed. R.Civ.P. to amend its answer.

Based on the written "Consultant's Agreement" (the, "Agreement") between Myrick and itself, GTE moves to compel arbitration. Myrick opposes on the grounds that the Agreement does not cover the present dispute. As with all issues relating to the scope of arbitration agreements "the question . . . reduces to a matter of contract interpretation: Did plaintiff, in executing the . . . Agreement, agree to arbitrate disputes [s]he might have with [the defendant]?" *McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994).

Paragraph 14 of the Agreement, entitled "Arbitration/Courts" states:

> Any dispute concerning the meaning, application, or violation of the Agreement shall be submitted to final and binding arbitration pursuant to the labor arbitration rules of the American Arbitration Association ("AAA"). Any proceedings shall be held at the AAA office in Pelham, NH.

Paragraph 15, entitled "Disputes" provides:

> Any disputes arising from this contract will be handled by arbitration.

GTE contends that Myrick's claims are within the scope of these arbitration provisions. While recognizing that Paragraph 14 is limited to disputes as to the meaning, application, or violation of the Agreement, it relies on the language of Paragraph 15 as decisive. It argues that the cumulative effect of both clauses requires arbitration. In particular, it points out that the language of Paragraph 15 is strikingly similar to the arbitration clause in *Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614 (1st Cir.1975), which provided for arbitration of "any controversy or claim arising out of or relating to this Agreement or the breach thereof." *Id.* at 616. The First Circuit interpreted this clause as covering *any* dispute arising out of the agreement and GTE requests the same interpretation of Paragraph 15.

Myrick responds that the reference in Paragraph 15 to disputes arising from "this contract" only covers the disputes referred to in Paragraph 14 (about the meaning of the contract) and does not cover employment issues such as her discrimination claim.[1] Myrick also contends that *Acevedo* is distinguishable because, according to her, the arbitration clause there was "significantly more comprehensive" than Paragraph 15 of the Myrick–GTE agreement.

■ GTE's motion to compel arbitration is granted. The cumulative effect of Paragraphs 14 and 15 which cover "any disputes arising from this contract" is that all disputes arising out of GTE and Myrick's contractual relationship, (e.g., Myrick's discrimination and harassment claims), are arbitrable. The language of Paragraph 15 (providing that "any dispute arising from this contract will be handled by arbitration") while not identical, is remarkably similar to the arbitration clause in *Acevedo*

---

1. To the extent that Myrick suggests that agreements to arbitrate statutory discrimination claims are unconscionable, her claim is contradicted by the Massachusetts Appeals Court in *Mugnano–Bornstein v. Crowell,* 42 Mass.App.Ct. 347, 353, 677 N.E.2d 242 (1997) (rejecting the position that these agreements are unconscionable).

(requiring arbitration of "any controversy or claim arising out of or relating to this Agreement or the breach thereof"). The *Acevedo* court held, as to such terminology, that "broad language of this nature covers contract—generated or contract—related disputes between the parties however labeled." *Id.* It follows that the provisions of Paragraph 15 of the Agreement at issue are properly interpreted to cover all conduct arising out of GTE and Myrick's contractual relationship.

Moreover, even if there were doubt as to whether Paragraph 15 covered Myrick's claim, "a healthy regard for the federal policy favoring arbitration" directs that, "as a matter of federal law, any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Brennan v. King*, 139 F.3d 258, 264 (1st Cir.1998).

█ Hall's motion to compel arbitration as to claims against him is also granted. Hall argues that under traditional agency theory, an agent, (Hall), is subject to the contractual provisions to which his employer is bound. He cites four circuit court decisions which hold that a principal's agreement to arbitrate claims against it also covers claims against its employees: *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2nd Cir.1993) (granting motion to compel arbitration in suit against non-signatory employee); *Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3rd Cir.1993) (holding that a corporation's broad arbitration clause covered suit against non-signatory employee "under traditional agency theory"); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281–82 (6th Cir.1990) (compelling arbitration in suit against non-signatory employee where the broad language of the agreement indicated the parties intent to arbitrate all disputes arising under the agreement); *Letizia v. Prudential Bache Sec.*, 802 F.2d 1185, 1187–88 (9th Cir.1986) (compelling arbitration in suit against non-signatory employee

because the contract "clearly indicated [company's] intention to protect its employees" through the arbitration provision).

In the face of these authorities, Myrick contends that the holding of *Moses H. Cone* precludes arbitration of his claims against Hall. In *Cone*, Mercury and Cone entered into an agreement under which any dispute would be resolved by submitting it first to Pease, (an architectural firm), and if necessary, to binding arbitration. A dispute arose between Cone and Mercury which was referred to Pease for decision. Disappointed with Pease's decision against it, Cone sued both Mercury and Pease in state court. Mercury then sought to compel arbitration. The Court held that, notwithstanding the effect of piecemeal resolution, Mercury could compel arbitration even though Cone's claims against Pease remained in state court.

Myrick's reading of *Cone* as precluding the arbitration of her claims against Hall is unfounded. In *Cone*, the Court assumed, without deciding, that the claims against Pease were not arbitrable, because none of the parties sought to include Pease in the arbitration. Moreover, even if the Court had positively decided that Pease's claims were not arbitrable, *Cone* would be distinguishable. In *Cone*, there was no employment relationship between any of the parties. The claims against Pease and Mercury, while related, were also separate and distinct, while the claims here against GTE and Hall are inextricably related.

The interwoven nature of Myrick's claims against GTE and Hall presents at least as convincing a case for arbitration as the facts in *Paul Revere Variable Annuity Ins. Co., et al. v. Thomas, et al.*, 66 F.Supp.2d 217, 225 (D.Mass.1999) and *Parrott v. Pasadena Capital Corp.*, No. 96–6243, 1998 WL 91076, at 4–5 (S.D.N.Y. March 3, 1998). In these cases, former employees sued their former employer and closely affiliated corporations for unlawful termination and related claims. The former employees, in connection with their

employment, had registered with the National Association of Securities Dealers ("NASD"). The NASD registration included an agreement to arbitrate controlled by § 8(a) of the NASD Code of Arbitration, entitled "Required Submission" which states:

> Any dispute ... between or among members and/or associated persons, and/or certain others, ... arising out of the employment or termination of employment of such associated person(s) by and with such member, shall be arbitrated.

The non-signatory affiliated corporations moved to compel arbitration. Although the affiliated corporations argued that they were covered by the specific language of § 8(a), in both cases the district court did not rely exclusively on the specific language of this section. In *Parrott,* the court compelled arbitration because:

> [T]he non-signatory Defendants were so closely affiliated with [signatory] Defendant PFSI at the time this lawsuit arose that they constitute "associated persons, and/or certain others" under NASD Code § 8, *and* ... the claims against the non-signatory Defendants so overlap with with the claims against PFSI as to make them sufficiently immersed in the underlying controversy with PFSI[.]

*Id.* at 6 (emphasis added).

In *Paul Revere,* the court compelled arbitration under the broad arbitration clause because the claims were inextricably intertwined and against closely affiliated defendants. The court held:

> Because the [non-signatory defendants] do not qualify as "persons associated with a member," they lack the ability to enforce the arbitration agreement on their own. Nevertheless, this Court finds that those [defendants] may be joined in the arbitration.... [I]t is evident that the [defendants] are all closely

affiliated with each other despite being organized as separate entities. This Court finds that the claims of [the plaintiffs] against the [signatory defendant] are inextricably intertwined with the claims against the other [defendants]. As such, the [non-signatory defendants] will be permitted to join [the arbitration].

*Id.* at 225.

The claims here are similarly inextricably related. Accordingly, Hall's motion to compel arbitration is granted.

GTE also moves to amend its answer under Rule 15(a) of the Fed.R.Civ.P to include an affirmative defense that Myrick has failed to comply with the administrative requirements of M.G.L. ch. 151B, § 9, 804 CMR § 1.15(2) and the former 804 CMR § 1.13(2) which are a legal prerequisite to Myrick's right to sue. *See Reidy v. Travelers Ins. Co.,* 928 F.Supp. 98, 107 (D.Mass.1996). Myrick opposes, contending that GTE's amendment is without merit because her failure to comply with the administrative requirements, if any, was "inadvertent" and therefore could not justify an award of summary judgment.

■ The motion to amend is allowed because the defense is not futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Courts have held that the failure to comply with the administrative requirements of M.G.L. ch. 151B, § 9 and related regulations, even if "inadvertent," can be a ground for summary judgment. *See e.g., Reidy,* 928 F.Supp. at 107 (holding that plaintiff's failure to "follow the proper administrative procedures for filing his employment discrimination claim [under M.G.L. ch. 151B, § 9]" which was also apparently inadvertent deprived the court of jurisdiction).[2]

■ Finally, GTE moves to amend its answer to include an affirmative defense

---

**2.** There appears to be disputed issues of fact and law pertaining to Myrick's compliance with the administrative procedures of M.G.L. ch. 151B. Because this is a motion to amend and not a dispositive motion on this issue it is enough to say that the affirmative defense is not futile.

alleging that GTE exercised reasonable care in preventing and correcting any sexually harassing behavior. The proposed defense is based on the recent United States Supreme Court cases, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) which held that a reasonable care defense is available in Title VII cases. However, Massachusetts discrimination law does not recognize the affirmative defense articulated in *Ellerth* and *Faragher*. The proposed affirmative defense is contrary to the Supreme Judicial Court's interpretation of M.G.L. ch. 151B in *College–Town v. Massachusetts Comm'n Against Discrim.*, 400 Mass. 156, 508 N.E.2d 587 (1987). *College–Town* holds that, under M.G.L. ch. 151B, an employer is vicariously liable for sexual harassment conduct of its supervisory personnel and has no reasonable care defense. *See id.* at 163, 166, 508 N.E.2d 587. Because *College–Town* precludes GTE's proposed affirmative defense alleging it exercised reasonable care, its motion to amend its answer to include that defense is denied.

GTE and Hall's motions to compel arbitration of claims against them are granted. GTE's motion to amend its answer under Rule 15(a) of the Fed.R.Civ.P. to include an affirmative defense alleging that the court has no jurisdiction over Myrick's claims because she failed to comply with the administrative requirements of M.G.L. ch. 151B, § 9, 804 CMR § 1.15(2) and the former 804 CMR § 1.13(2) is granted. GTE's motion to amend its answer under Rule 15(a) of the Fed.R.Civ.P. to include an affirmative defense alleging GTE exercised reasonable care in preventing and correcting any sexually harassing behavior is denied.

It is so ordered.