STATE OF MAINE                                    MAINE SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL DIVISION
                                                  DOCKET NO. CV-15-209


ROBERT S. LAMORGESE,              )
                                  )
          Plaintiff,              )
                                  )
                                  )
v.                                )    ORDER AND DECISION GRANTING
                                  )    DEFENDANT'S MOTION TO STAY
                                  )    PROCEEDINGS AND COMPEL ARBITRATION
KATAHDIN VALLEY HEALTH            )
CENTER,                           )
                                  )
          Defendant.              )


Before the Court is Defendant Katahdin Valley Health Center's ("KVHC") Motion to

Stay Proceedings and Compel Arbitration. Defendant moves the Court, pursuant to the Maine

Uniform Arbitration Act, 14 M.R.S. § 5927, *et seq.*, to order arbitration of the claims alleging

age and disability discrimination under the Maine Human Rights Act ("MHRA"). Defendant

objects. Hearing was held on February 24, 2016. After consideration, the Motion to Stay

Proceedings and Compel Arbitration is **GRANTED** for the reasons set forth below.


## BACKGROUND

All of the facts are as alleged in the complaint unless noted. Defendant KVHC hired

Plaintiff Dr. Robert LaMorgese in January 2012 as a physician for its Patten location. Dr.

LaMorgese and KVHC signed an "Employment Agreement" on January 4, 2012. (Def. Ex. A1.)

The agreement states, in part:

> 2. EMPLOYEE COMPENSATION: ... EMPLOYEE must maintain compliance with
> all KVHC EMR, Medical and Administrative Protocols....

1

3. WORKING FACILITIES: The EMPLOYER shall furnish the EMPLOYEE with office space, equipment, technical, and clerical assistance and such other facilities, services and supplies as shall be needed to enable him to perform the duties required of him hereunder in an efficient and professional manner.

5. DUTIES: . . . The EMPLOYER shall have the power to determine the specific duties to be performed by the EMPLOYEE including the means and manner in which said duties are performed and as described in the (Job Description attached) and is not to be considered all inclusive. . . . [T]he Employer shall have the power to; but not limited to the following:

. . .

    i.    Keeping and maintaining (or causing to be kept and maintained) appropriate, as desired by the Employer, legible records relating to all professional services rendered pursuant to this Agreement and the laws of the United States Government and the State of Maine.

    j.    Preparing and attending to ... all reports, claims ...

10. ARBITRATION: Any controversy arising out of, or relating to, the Agreement, or any modification or extension thereof, or breach thereof, shall be settled by arbitration in the County of Aroostook (or, if applicable law requires some other forum, then such other forum) in accordance with the demand for arbitration of a dispute. Notice of any such dispute shall first be filed in writing with the other party to this Agreement within 10 business days. The decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other. The arbitrators shall fix their own compensation and shall assess the costs upon either or both parties. Judgment on any arbitration award may be entered in any court of competent jurisdiction. This paragraph 10 shall be specifically enforceable under the laws of the State of Maine.

14. TERMINATION BY THE EMPLOYER FOR CAUSE:. . . Cause for termination shall include, without limitation, and by no means is to be all inclusive to the following events:

. . .

    b.    Upon the Employee's failure to strictly comply with any of the terms, conditions, and obligations set forth herein.

    c.    Upon the Employee having suffered a "total disability" ....

Dr. LaMorgese was 65 years old when he was hired by KVHC. Throughout the hiring process Dr. LaMorgese was represented by a recruitment company, which negotiated several terms of his employment with KVHC. (Def's Mem. Ex. A.) Upon hiring him, KVHC provided Dr. LaMorgese with a scribe to use the electronic data system used by KVHC for the creation

2

and updating of medical records. KVHC updated its medical records system in 2013, and from that point forward did not provide Dr. LaMorgese with a scribe, though Dr. LaMorgese offered to pay for the scribe himself through a reduction in his salary. Dr. LaMorgese alleges that the reason KVHC refused to provide him with a scribe was based on stereotypes about those over the age of 65 and their ability to use a computer. Dr. LaMorgese also alleges that KVHC made "age-based stereotypical inquires and requests of him," including asking if he was getting senile and requesting that he learn how to type on a computer.

In January 2014, Dr. LaMorgese alleges he suffered a concussion, and due to post-concussion syndrome, has a disability within the meaning of the MHRA. In addition to his allegation of age discrimination, Dr. LaMorgese alleges that KVHC's failure to provide him with a scribe constituted an intentional refusal to accommodate his disability. KVHC suspended Dr. LaMorgese on February 7, 2014, and terminated his employment in April of 2014. Dr. LaMorgese was replaced by a 48-year-old physician.

Defendant argues that Dr. LaMorgese's employment was terminated, pursuant to § 14 of the Employment Agreement, as Dr. LaMorgese was unable to perform the essential functions of his job as a physician with or without reasonable accommodation.[1]

Dr. LaMorgese argues that the arbitration provision in the Employment Agreement is unenforceable because it lacks mutuality and consideration. Alternatively, Dr. LaMorgese argues that the scope of the arbitration agreement does not apply to his claims under the MHRA. Finally, Dr. LaMorgese argues that the arbitration agreement is unenforceable because the prohibitive cost of arbitration would prevent him from "effectively vindicating his rights." (Pl.'s Mem. 10-11.)

---

[1] At oral argument, Defendant asserted that Plaintiff had attested that he is "disabled" as he is collecting long-term disability benefits. However, such assertions are not part of the record and the Court does not consider the same.

3

DISCUSSION

I.    Agreement to Arbitrate

The Maine Uniform Arbitration Act, 14 M.R.S. § 5927, *et seq.*, provides that a written agreement to arbitrate is "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." 14 M.R.S. § 5927. see also 9 U.S.C.§2. The Superior Court shall order arbitration if it finds that a valid arbitration agreement exists between the parties. 14 M.R.S. § 5928(1). The question of arbitrability is a matter of contract interpretation, and an arbitration agreement is construed with reference to "ordinary state-law principles that govern the formation of contracts". *Winterwood Farm, LLC v. JER, Inc.*, 327 F.Supp.2d 34 (D.Me. 2004). Maine has a broad presumption favoring substantive arbitrability, which dictates that a court should compel arbitration "if (1) the parties have generally agreed to arbitrate disputes, and (2) the party seeking arbitration presents a claim that, on its face, is governed by the arbitration agreement." *Roosa v. Tillotson*, 1997 ME 121, ¶3, 695 A.2d 1196. Further, a dispute should be deemed arbitrable unless it may be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *V.I.P. Inc. v. First Tree Dev.*, 2001 ME 73 ¶ 4, 770 A.2d 95-96, see also *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985)(finding that the parties' intentions are "generously construed as to issues of arbitrability").

Here, Dr. LaMorgese and KVHC entered into an agreement where both parties made promises to each other, and Dr. LaMorgese was employed by KVHC for over a year before his employment was terminated. Dr. LaMorgese promised, among other things, to perform medical services, meet certain performance standards, and only work for KVHC. In exchange, KVHC

4

promised, among other things, to pay Dr. LaMorgese a salary and benefits and to provide him a space to perform his work.

The parties negotiated the terms of Dr. LaMorgese's employment. Dr. LaMorgese and the company that represented him in the negotiations spent time and effort communicating about Dr. LaMorgese's employment and the terms of the contract. There was back-and-forth communication. KVHC agreed to request(s) made by Dr. LaMorgese – there was, in fact, bargaining. Dr. LaMorgese was an active participant in the negotiation process and accepted the agreement. "To establish a legally binding agreement the parties must have mutually assented to be bound by all of its material terms." *Roy v. Davis*, 553 A.2d 663, 664 (Me. 1989). Dr. LaMorgese is a highly-educated, experienced physician who was assisted in the hiring process by a recruitment company. Here, Dr. LaMorgese and KVHC both assented to the terms of the contract - they both signed the contract after days of negotiation and consideration, and initialed each page of the agreement. This was not a take-it or leave-it contract.

Furthermore, the employment agreement was not illusory. During Plaintiff's employment with KVHC, both Plaintiff and Defendant were bound by the Employment Agreement: Plaintiff was required to work in accord with the agreement and Defendant was required to pay the Plaintiff and provide Plaintiff with working facilities in accord with the agreement. There was a mutuality of obligations. Defendant did not "write itself out" of arbitration.[2] There are several issues which KVHC would have been required to submit to arbitration. By way of example only, Defendant would have been required to submit any dispute about the liquidated damages

---

[2] In a case involving termination without cause (which is not this case), any conflict between paragraphs 1 and 13 (setting the term of the agreement at 4 years and providing for termination by mutual agreement) and paragraph 14 (setting forth that the Defendant could terminate the Plaintiff's employment without cause), would require contract interpretation through arbitration, and this potential conflict does not render the agreement illusory. To the extent Defendant may not have been required to submit a dispute about violation of the non-compete provision to arbitration – a dispute which would be related to Plaintiff's employment by someone other the Defendant – does not make the employment agreement illusory. (Def."s Ex. 1A, ¶ 8)

5

provision of the agreement to arbitration. (Def.'s Ex. A1, ¶ 9). In this case, there is no question that if the roles were reversed and Dr. LaMorgese demanded arbitration and KVHC objected, the same analysis would be required (and ultimately, after the considerations below, arbitration would be ordered).

Moreover, by agreeing to arbitrate, the parties did not agree to forego substantive rights. Instead, they only agreed that a dispute over certain substantive rights would be determined by arbitration rather than by judicial determination. See *Mitsubishi.*

Finally, the contract did not include any type of unilateral modification clause, which may have rendered it illusory. The employment agreement provides that "[n]o amendments or additions to this contract shall be binding unless in writing and signed by both parties."

Therefore, the Court finds that the Employment Agreement is an enforceable contract wherein the parties unambiguously agreed to arbitrate all claims "arising out of, or related to" the Employment Agreement or breach thereof, including termination of the Agreement.

## II.  Scope of Arbitration Agreement

The controversy in this case is the termination of Plaintiff's employment with the Defendant, and such employment was governed by an Employment Agreement that set forth the terms and conditions of employment. Plaintiff contends that the termination was discriminatory due to his age and disability. Defendant contends that the termination was due to Plaintiff's inability to perform the essential functions of his job as a physician with or without a reasonable accommodation.

The party seeking arbitration must present a claim that, on its face, is within the scope of the arbitration agreement. *Roosa v. Tillotson*, 1997 ME 121, ¶3, 695 A.2d 1196. The Employment Agreement signed by the parties in this case states: "[a]ny controversy *arising out*

of, or *relating to*, the Agreement or any modification or extension thereof, or breach thereof, shall be settled by arbitration . . . ." (emphasis added).

The Law Court has interpreted the phrase "arising out of" broadly, and has cited with approval interpretation of the phrase "arising out of" as meaning "originating from, growing out of, flowing from, incident to or having connection with". *Acadia Ins. v. Vt. Mut. Ins. Co.*, 2004 ME 121, ¶ 8, 860 A.2d 390. An injury "arises out of" employment when it has its "origin, its source, or its causes" in the employment. *Acadia.* The term "in connection with" is even broader and encompasses activities "linked, associated with, or related to" the subject at issue. *Acadia Ins.* Finally, a non-contractual claim has been held "related to" an underlying contract for purposes of arbitrability when the claim "touches matters covered by or is interwoven with the underlying contract" *Winterwood Farm* at 39. When the prudent adjudication of a claim requires reference to the contract, the claim is "related to" the underlying contract. *Id.*

A contractual provision that arbitration is required for any claim that "arises out of or relates to" an employment agreement is sufficiently broad to cover claims such as discrimination claims. *Tracey Fox-Bartels v. Katahdin Valley Health Center,* HANSC CV-14-03 (Me. Super. Ct., Han. Cty., June 30, 2014). See also *Shayanifar v. Northeast Tech. Inst., No. 2:12-CV-00249-JAW,* 2012 U.S. Dist. LEXIS 167256, *4 (D. Me. Nov. 26, 2012)(holding that an Agreement that provides that any claim "arising out of or relating to" the contract requires arbitration of employment discrimination claims); *Acevedo Maldonado v. PPG Indus. Inc.,* 514 F.2d 614, 616 (1st Cir. 1975)(holding that just as a tort claim may arise out of or relate to a contract so may a claim for contribution); *Soto-Fonalledas v. Ritz-Carlton,* 640 F.3d 471, 476 (1st Cir. 2011)(holding that Title VII and ADA claims are arbitrable); *Myrick v. GTE Main Street Inc.,* 73 F. Supp.2d 94, 95-96 (D. Mass. 1999) (holding that discrimination claims are arbitrable as disputes arising from a contract).

7

Dr. LaMorgese's age and disability discrimination claims both center around the terms and conditions of his employment and termination of that employment. The employment relationship arose from the Employment Agreement. The Employment Agreement sets forth the agreement between the parties, including Dr. LaMorgese's compensation and working facilities; his duties, including record-keeping; causes for termination; and the requirement that controversies "arising out of or relating to" the Agreement ... be settled by arbitration. Paragraphs 2 and 3 of the Employment Agreement set forth Dr. LaMorgese's compensation and the working facilities to be provided to him. Paragraph 5 sets forth certain duties to be performed by Dr. LaMorgese, including "keeping and maintaining (or causing to be kept and maintained) appropriate, as desired by the Employer, legible records relating to all professional services rendered pursuant to the Agreement." Moreover, paragraph 5 further states that KVHC has the power to determine the *means and manner* in which Dr. LaMorgese performed his duties. Paragraph 14 lists several reasons why an employee may be terminated, including "upon the Employee's failure to strictly comply with any of the terms, conditions, and obligations set forth herein" and "upon the Employee having suffered a "total disability." Finally, paragraph 10 provides that "any controversy arising out of, or relating to, the Agreement ... or breach thereof, shall be settled by arbitration." Therefore, the Court finds that the claims in this case "arise out of or relate to" the Employment Agreement.

Alternatively, Plaintiff seeks compensatory damages, back pay, front pay and reinstatement. The Employment Agreement sets forth the employment relationship between the parties, including the compensation and benefits to which Dr. LaMorgese was entitled as an employee of KVHC. Thus, alternatively, Plaintiff's claims arise out of and relate to the Employment Agreement.

8

In 2014, in a case involving the exact language of this Employment Agreement, Justice Mullen found that Plaintiff's claims, including discrimination claims, arose out of the defendant's decision to terminate the plaintiff's employment and therefore arbitration was ordered on all claims. *Tracey Fox-Bartels.*[3] In *Shayanifar*, the language in an employment agreement that: "any controversy or claim arising out of or relating to this contract, ... shall be settled by arbitration" was found to be sufficiently broad to encompass discrimination claims.

Defendant has not waived its right to arbitration. *Fox-Bartels; Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 16 )(1st Cir. 2005); *Baker v Securitas Security Services USA, Inc.*, 432 F.Supp.2d 120, 125-127 (D.Me. 2006)(holding that failure to raise arbitration as an issue before MHRC does not waive a contractual right to compel arbitration).

This Court finds that the issues in dispute in this case fall within the scope of the Employment Agreement.

### III.    Prohibitive Cost of Arbitration

"[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000); *see also Stenzel v. Dell*, 2005 ME 37, ¶ 29, 870 A.2d 133. The First Circuit Court of Appeals expanded on *Green Tree's* holding in *Kristian v. Comcast Corp.*, discussing that "[i]f, because of a consumer agreement . . . a plaintiff's only apparent dispute resolution forum is binding, mandatory arbitration, and the plaintiff cannot afford to arbitrate because of an inability

---

[3] Although the Fox-Bartels controversy included a breach of contract claim, courts must examine a complaint to assess whether any individual claim must be arbitrated. *KMPG LLP v. Cocchi*, 132 S.Ct. 23, 26 (2011)(holding that the court must separately determine arbitrability of each of Plaintiff's claims, even if it results in piecemeal litigation). In Fox-Bartels, the Court determined that all claims, including the discrimination claims, were subject to arbitration.

9

to recover attorney's fees and costs, the plaintiff is essentially deprived of any dispute resolution forum whatsoever." *Green Tree*, 531 U.S. 79, ¶ 92; *Kristian*, 446 F.3d 25, 51 (1st Cir. 2006). In *Kristian*, the arbitration agreement explicitly stated that employee plaintiffs bore their own costs, including the costs of experts or attorneys, and that this "provision[], if applied in the arbitral forum, would prevent the vindication of statutory rights." 446 F.3d at 64.

Here, Dr. LaMorgese failed to satisfy his burden of showing the likelihood of incurring prohibitively expensive costs by this matter proceeding to arbitration. The only evidence Dr. LaMorgese submitted to satisfy his evidentiary burden is an invoice for $11,459.58 from a prior arbitration in a different case between Dr. LaMorgese's law firm and KVHC. There is no evidence that the prior case was similar in scope to this case, or that the length of this arbitration would be similar to the length of the prior arbitration (4 days). Moreover, the $11,459.58 charged in the prior arbitration was actually charged to the defendant in that case, even though the defendant prevailed in the matter. The arbitration clause here states that "[t]he arbitrators shall fix their own compensation and shall assess the costs upon either or both parties." (Def.'s Ex. 1A, ¶10). The arbitration clause does not fix these costs upon Dr. LaMorgese, and Dr. LaMorgese does not explain why it is likely that the arbitrator would fix the costs to him and him alone. Finally, Dr. LaMorgese has been a high earning medical doctor who was earning approximately $180,000.00 per year before the termination of his employment and he has not provided any other information about his financial resources (he may be wealthy or destitute), for the Court to make a determination that the cost of arbitration would be prohibitively expensive to him. Therefore, since Dr. LaMorgese has failed to meet his burden to establish the likelihood of incurring prohibitively expensive arbitration costs, this matter will proceed to arbitration.

10

## CONCLUSION

The employment agreement between KVHC and Dr. LaMorgese is an enforceable contract. Dr. LaMorgese's and KVHC's claims, on their face, are within the scope of the arbitration agreement. Finally, Dr. LaMorgese failed to show the likelihood of incurring prohibitively expensive costs if this matter were to proceed to arbitration. In sum, because the parties agreed to arbitrate and the arbitration clause broadly covers the claims alleged in plaintiff's complaint, the Defendant's Motion to Stay Proceedings and Compel Arbitration is **GRANTED**.

This entry is:

1. The Defendant's Motion to Stay Proceedings and Compel Arbitration is **GRANTED**. This matter is **STAYED** pending the results of the arbitration proceedings between the parties.
2. The parties shall file a joint status report no later than **October 1, 2016.**
3. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated:  4/25/16

Ann M. Murray, Justice
Maine Superior Court

Date entered on Civil Docket: 5/5/16

11