### HUNTER v. MILLS.

1. Plaintiff was induced by his uncle, the defendant's testator, to change his place of residence and to take possession of a tract of land purchased by testator for plaintiff, and to improve it at great expense, testator taking titles in his own name as a protection against plaintiff's creditors. *Held*, that plaintiff was entitled to specific performance of testator's verbal promise to convey; that such promise was based upon a valuable consideration; and that defendant could not defeat the relief sought because there was a purpose to obstruct creditors.

2. Findings of fact by master and Circuit Judge, approved.

3. The expenditure of large sums of money by plaintiff in reclaiming the land given to him by his uncle, and taken possession of by him, made a case of part performance, which is outside the statute of frauds.

4. This uncle having devised this tract of land to A, and died intestate as to other lands, the nephew (one of the heirs) is not bound to elect between this tract and his portion of the intestate estate; nor can the other heirs be called upon to make good to A. his lost devise.

5. Direction as to costs in this case not disturbed, it being a matter largely within the discretion of the judge.

Before NORTON, J., Laurens, September, 1887.

This was an action by John P. Hunter against John A. Mills, Toliver Robertson, executor of William Mills, deceased, and the heirs at law of Wm. Mills, for specific performance, commenced November 10, 1885. The appeal was from the following decree:

This case comes before me on exceptions to the master's report, all the issues of law and fact having been submitted to him.

After hearing the pleadings, evidence, and argument, I concur in the findings of fact and conclusions of law announced by the master.

In the winter of 1879 or 1880, Wm. Mills was greatly interested in the welfare of the plaintiff, John P. Hunter, who was his nephew and one of his heirs apparent. Plaintiff had then removed from his own place, because he could not raise grain on it, and lived on rented land. Wm. Mills thought this bad financial policy on plaintiff's part, but recognizing the strength of plaintiff's reason, offered, if plaintiff would buy John Lanford's place, adjoining his own, and move back on his own, and put the Lanford place in cultivation, he, Mills, would pay for the said Lanford lands and give them to plaintiff. Plaintiff accepted the proposition, bought the Lanford lands, moved back to his own place, took possession of the lands so bought, and began vigorously to clear, drain, and put them in cultivation. William Mills paid for these lands and took title to himself.

Plaintiff continued to clear, drain, and put these lands in cultivation up to Wm. Mills's death at great labor and expense to himself, at which time he had substantially complied with the agreement on his part. Wm. Mills never executed titles to plaintiff, but, on the contrary, about one month before his death he devised the lands to the defendant, John A. Mills, although by many unequivocal admissions and acts he had recognized the agreement between plaintiff and himself. This devise can be reconciled with Wm. Mills's high character only on the assumption that no money having been paid to him by plaintiff, he thought he had power to revoke the gift at any time prior to its perfection by the execution of a legal title.

This action is to have titles executed to plaintiff for said land. John A. Mills objects: 1st. That there was no agreement. 2nd. That if there was, it was not founded on a sufficient consideration. 3rd. If so, it is obnoxious to the statute of frauds. 4th. That the title was taken to Wm. Mills to defraud plaintiff's creditors. I have already found that there was an agreement. The facts found applied to the law laid down in *McKeegan* v. *O'Neill*, 22 S. C., 454, and cases cited, show that the consideration was sufficient. The possession and performance by plaintiff of the

agreement on his part takes the case out of the statute of frauds. It is clear from Wm. Mills's proven and plaintiff's presumed character, and from the nature and circumstances of the transaction, that title was not made to defraud plaintiff's creditors, but for the purpose of requiring plaintiff to perform his stipulations before he should have title.

Wm. Mills died intestate as to the greater part of his estate. Plaintiff takes as distributee and heir at law one-third of the intestate's property. John A. Mills further interposes a supposed equity, to have plaintiff as such distributee and heir at law compensate him for the loss occasioned to him by plaintiff's election to have the Lanford land conveyed to plaintiff, if such right be accorded. Plaintiff takes nothing under Wm. Mills's will, and the weight of authority is that he is not put to his election, but may claim the Lanford lands, and also take as distributee and heir, without making compensation to John A. Mills. I have not been able to find a direct decision of the courts of this State, but we have a somewhat analogous case in *Seabrook* v. *Seabrook*, 10 Rich. Eq., 495.

John A. Mills also urges, lastly, that he is at least entitled to have compensation out of the undivided estate for the loss of his devise. I do not think such a proposition tenable.

It is therefore ordered, decreed, and adjudged, that the master of Laurens County do, in behalf of all the parties to this action, execute to the plaintiff, John P. Hunter, titles to the tract of land conveyed on January 10, 1881, by John Lanford to Wm. Mills, and that Toliver Robertson, as executor of the will of Wm. Mills, deceased, do pay the costs of the plaintiff and of all the defendants in this action out of the estate of his testator, the said Wm. Mills, deceased.

From this decree the defendants, John A. Mills and Toliver Robertson, executor, appealed.

*Mr. W. H. Martin*, for appellants.

*Messrs. Holmes & Simpson*, contra.

June 26, 1888.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN. William Mills, late of the County of Laurens, departed this life in July, 1885, seized and possessed of a considerable estate, real and personal. He was never married, but left collateral heirs. He left a will, by which he disposed of only part of his estate, dying intestate as to the remainder. Among the property included in his will was a small tract of land (81¼ acres), known as the "Lanford land," which he devised to his "friend, John A. Mills," who claimed as devisee. John P. Hunter, a nephew and one of the heirs at law of William Mills, was then and had been living on the land for several years (certainly since 1881), and cultivating it as his own. He claimed that the testator, William Mills, in his life-time made with him a verbal agreement that if he (Hunter) would purchase the "Lanford" place, and improve it by clearing and ditching certain low grounds on it, he (Mills) would pay the purchase money for the benefit of the said Hunter. He claimed that he had, at great expense and trouble, performed his part of the agreement, and instituted this proceeding against the said John A. Mills, named as devisee, and Robertson, the surviving executor, and the other heirs of said testator, William Mills, for specific performance of the said agreement.

The defendants, and especially John A. Mills, to whom the land was devised, made vigorous defence. He interposed a verbal demurrer that the complaint did not state facts sufficient to constitute a cause of action; and that being overruled, he denied that the testator had made any such agreement, but if so, it was not such agreement as the court would require to be specifically performed. It was referred to the master, C. D. Barksdale, Esq., "to hear and determine the issues of law and of fact." He took the testimony, which is all printed in the Brief, and made a clear and condensed statement of the facts, as follows:

"1. About December, 1879, William Mills agreed verbally with John P. Hunter, that if he, the said Hunter, would purchase of John Lanford a certain tract of land, take possession of and improve and cultivate the same, that he (Mills) would pay the purchase money, and thereby give him the land.

"2. That the consideration moving the said Mills to this agreement was the natural affection he bore the plaintiff, who was his

nephew, the particular interest which he took in his welfare, and a desire to assist him in procuring such land as would 'produce corn,' since the land he owned was mainly suitable for the production of cotton.

"3. That the said plaintiff, under this agreement, and induced by this promise, made the contract of purchase with Lanford at $15 per acre for the land, paid the said Lanford $50 to 'bind the trade,' for which he took a receipt of Lanford as 'received of William Mills,' went into possession of the land, and has improved it at considerable expense—enhancing its value to such an extent that it is now worth from $35 to $50 per acre.

"4. That these improvements were made by the plaintiff with the knowledge and approval of said Mills, who at various times, while the work of improvement was progressing, stated to different persons that he had given the land to his nephew, the plaintiff, to enable him to make the corn which was necessary for bread for his family, and he hoped he would succeed.

"5. That a deed for the property was made by the said Lanford to the said Mills on January 10, 1881, which was recorded on February 16, 1881.

"6. That the said plaintiff has paid the taxes on the land since the purchase, and has held the undisputed possession thereof ever since his entry thereon under the parol agreement aforesaid, except that the defendant, John A. Mills, attempted to take possession thereof about November, 1885, by entering thereon for the purpose of sowing grain, which the plaintiff forbade and protested against," &c.

Upon this state of facts the master recommended that the plaintiff should have his decree for specific performance, and that the court should order titles to be made to him. The cause came up on exceptions to this report before Judge Norton, who confirmed the report, and ordered the master, in behalf of all the parties to the action, to execute title of the land to the plaintiff; and "that Toliver Robertson, as executor of the will of William Mills, deceased, do pay the costs of the plaintiff and of all the defendants out of the estate of his testator, the said William Mills."

From this decree the defendants, John A. Mills and Toliver Robertson, as executor, appeal to this court upon the following

exceptions: "I. His honor erred in not holding that the complaint did not state facts sufficient to constitute a cause of action: (1) in not setting forth a valuable consideration flowing from the plaintiff; (2) in setting forth an alleged gift or agreement which would operate as a fraud upon plaintiff's creditors. II. His honor erred in holding that William Mills agreed to give the land described in the complaint to John P. Hunter. III. His honor erred in holding that a parol gift of land is enforcible by action for specific performance on behalf of a collateral kinsman upon a meritorious consideration. IV. His honor erred in not holding that plaintiff had been reimbursed for any improvements he may have made upon said land. V. His honor erred in holding that the doctrine of election did not apply in this case. VI. His honor erred in holding that John A. Mills was not entitled to compensation out of the undivided estate of William Mills, deceased. VII. His honor erred in decreeing that the costs be paid out of the estate of William Mills," &c.

First. In reference to the demurrer, that the complaint did not state facts sufficient to constitute a cause of action for specific performance, the objection seems to be double: (1) in not setting forth a valuable consideration flowing from the plaintiff; and, (2) that equity will not order specific performance of any contract, the object of which was to defraud the creditors of the person seeking performance. It seems to us that the complaint does allege valuable as well as good consideration, in that Hunter undertook to contract for the land, to leave his own place and take possession of it, and to improve it by clearing and ditching the low grounds, &c., &c. Besides, it should not be overlooked that there is a class of engagements, involving promises to convey property, which are enforcible in equity "where a party makes a declaration in order to accomplish a particular purpose, and secures what he desires by means of such representation." "If a benefit has been conferred as the consideration for any act, a party who knowingly accepts that benefit, though he may not be bound by an actual contract, or a condition of performance annexed to the gift, is compellable in equity to do the act." See *Adams Eq.*, *79; *McKeegan* v. *O'Neill*, 22 S. C., 460, and authorities.

78                    HUNTER *v.* MILLS.

_____
                 Opinion of the Court.              [29 S. C.
_____

It may be that the enhanced value which Hunter added to the land by his improvements, was equitably his property, and as such liable for his debts; but we cannot clearly see how that should be an obstacle in the way of specific performance at the instance of Hunter. The whole purchase money of the land was paid by the testator Mills, which could be no fraud on the creditors of Hunter. There are no creditors of Hunter objecting. The delay in making titles to Hunter was the act of Mills, and not of Hunter, who is now invoking the aid of the court to require the representatives of Mills to do *now* what he insists should have been done before.

Second. The master found as matter of fact, that the testator, Mills, agreed with the plaintiff that if he would purchase the land, take possession of it, and improve and cultivate the same, he (Mills) would pay the purchase money in Lanford's notes, and thereby give him (Hunter) the land; and that the plaintiff, under this declaration and induced by this promise, performed his part of the arrangement. The Circuit Judge concurred in this, and under the well established rule of this court, it must be considered as established, unless the finding is without evidence to support it, or is against the manifest weight of the evidence. We have read the evidence carefully, and we cannot say that the finding is either without evidence or against the weight of it.

Third. But assuming that such an arrangement was made, the agreement was in reference to land and only verbal, and it is insisted that such a parol gift of land is not enforcible by action for specific performance on behalf of a collateral kinsman, upon a meritorious consideration. True, the promise was as to land and rested in parol, but there is nothing in that fact alone which must stand in the way of its being specifically performed, if in all other respects it is of a character proper for such relief. The real objection indicated is the statute of frauds, which requires all contracts as to land to be in writing. But it is almost as familiar as the statute itself, that part performance of a given character will take a case out of the statute of frauds. The doctrine is thus stated in condensed form by Mr. Pomeroy: "A verbal contract for the sale or leasing of land, if part performed by the party seeking the remedy, may be specifically enforced by

Courts of Equity, notwithstanding the statute of frauds. The ground upon which the remedy in such cases rests is that of equitable fraud. It would be a virtual fraud for the defendant, after permitting the acts of part performance, to interpose the statute. * * * The acts of part performance, therefore, in order to satisfy this principle, must be done in pursuance of the contract, and must alter the relations of the parties. The most important acts which constitute a sufficient part performance are, actual possession, permanent and valuable improvements, and those combined," &c. 3 *Pom. Eq. Jur.*, § 1409; *Mims* v. *Chandler*, 21 S. C., 480.

It is further urged, however, that it was a gift only upon meritorious consideration, and the court will not order specific performance of a contract which is purely voluntary and without valuable consideration. To this rule there are some well established exceptions, but we think it unnecessary, and would probably tend to confusion, to go into that subject now. We have already endeavored to show that this is not a case of the kind indicated, but that there was such valuable consideration as a Court of Equity will recognize. It is true that in the promise made by the testator, Mills, there was generosity. He had no wife or children, Hunter was his nephew, of the class of kindred nearest to him in blood, and doubtless he felt "an interest" in him on that account. But while the arrangement was generous to his nephew, it was also practical, being founded on a valuable as well as a good consideration.

In *Kurtz* v. *Hibner* (55 Ill., 514, 8 Am. Rep., 668), the court say : "The Court of Equity will always enforce a promise upon which reliance is placed, and which induces the expenditure of labor and money in the improvement of land. Such a promise rests upon a valuable consideration. The promisee acts upon the faith of the promise. We can perceive no important distinction between such a promise and a sale. Courts would sanction wrong and fraud not to sustain such a promise," &c. In *Hardesty* v. *Richardson* (44 Md., 617, 22 Am. Rep., 61), the court say : "It is alleged and abundantly proved that large expenditures were made in permanent improvements upon the land, with the knowledge of the father, and which were induced by and made upon

the faith and in consideration of the father's promise to convey the land.   This constitutes a good equitable consideration, which Courts of Equity will protect and enforce.   In such a case, the court relies not so much on the contract, which falls within the statute of frauds, as on the acts done under it subsequently, on the faith that the promise will be performed by the other party. When, therefore, a gift has led to the expenditure of money or labor on the land given, in making permanent improvements of considerable extent, the gift becomes irrevocable in equity, as it would operate a fraud on the donee to allow the donor to avoid the performance of his undertaking," &c.

But if specific performance is decreed and the land given to the plaintiff, thereby defeating the attempted devise of it to John A. Mills, it is ingeniously urged upon us that Hunter should be required to elect between the Lanford land, or its equivalent in value of his share as distributee of the intestate property of the testator, William Mills, which should go to John A. Mills in lieu of his lost devise.   Hunter takes nothing under the will, and we agree with the Circuit Judge, that the facts do not raise a case of election ; there are wanting "two inconsistent or alternative gifts, with the intention, either expressed or implied, that one shall be the substitute of the other."   If Hunter's distributive share of the intestate property had been given to him by the will, instead of going to him under the law, he might possibly have been required to elect.   "The fundamental doctrine is, that in order to create the necessity for an election, the donor must give to B some property which belongs to A, and must at the same time give to A some property of his own."   See 1 *Pom. Eq. Jur.*, section 469 and notes.

Nor do we think that all the heirs together are required to make good the lost devise to John A. Mills.   If the testator, Mills, had not attempted to dispose of the Lanford land, but it had descended to Hunter and the other heirs as intestate, we can understand how John A. Mills might have made the claim that, to the extent of Hunter's interest in this land descended, his claim for the land itself should be regarded as *pro tanto* "satisfied."   But the testator, Mills, undertook to convey the land away from the heirs,· and their interest as such is precisely the

same, whether it goes to the plaintiff, Hunter, or to John A. Mills. The distributees do not hold under the will, but by the law of inheritance, and we are not aware of any principle or law in this State which makes it obligatory on them to "compensate" John A. Mills for his lost devise. It seems to us that, somewhat like an "adeemed" legacy, it must simply go out of the will.

Costs in equity are largely within the discretion of the Circuit Judge as a part of the relief granted.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.