17222

J. S. WATSON *et al.,* Respondents, v. OTHELLA C. WATSON,
Appellant

(95 S. E. (2d) 266)

*Messrs. C. S. Bowen* and *Williams & Henry* of Greenville, *for Appellant,*

*Messrs. W. E. Bowen, J. G. Leatherwood* and *L. F. Simpson, Jr.,* of Greenville, *for Respondents,*

November 14, 1956.

STUKES, Chief Justice.

Talley Watson, a married, childless farmer of Greenville County, died on May 11, 1954, leaving of force his last will dated July 12, 1951, which was duly admitted to probate. After bequest of his Ford truck, by Item III of the will testator bequeathed to his wife all of the remainder of his personal property. In Item IV he devised all of his real estate, which was described as about 140 acres, more or less, in Butler Township, to his wife for life and upon her death to his nieces and nephews, excepting two of them whom he named. Item VI of the will follows:

"In the event I should sell any of my real estate, prior to my death, the proceeds therefrom shall go to my said wife for and during the term of her natural life, and at her death, to my said nieces and nephews, excluding, however, Jasper Watson and Lloyd Watson from any interest therein."

By deed dated September 7, 1951, testator conveyed to a purchaser 121.61 acres of his land for the gross sum of $21,281.75, which included the commission of his real estate agent. The attorney who handled and closed the transaction testified to the details of it. Testator was given a check, payable to him, in the amount of $19,330.10 and his agent another check for $127.50, which together represented the consideration to testator, arrived at by calculation of the acreage at $160.00 per acre. The balance of the consideration, which was the difference between $160.00 and $175.00 per acre, was the agent's commission for the sale of the property.

Testator on September 10, 1951, deposited the sum of $19,400.00, which consisted principally of the above check for $19,330.10, on savings in a Savings & Loan Association in the City of Greenville which, it is established by the evidence, was the net consideration for his conveyance, less the sum of $57.60. For the deposit he received a certificate

representing investment shares instead of a passbook, and interest or dividend at the rate of three per cent per annum on his deposit balance was thereafter paid to him semi-annually, by checks of the Association. Testator had no former account in the Association; his subsequent transactions in it follow: On February 17, 1953, he withdrew $8,000.00 from his savings account and on the same date purchased therewith a house and lot in the City of Greenville, the deed for which recites consideration of $8,500.00; the source of the apparent difference of $500.00 is not disclosed by the evidence. Afterward, on March 11, 1953, testator sold and conveyed the remainder of his land to a purchaser for $8,000.00 of which he deposited $7,500.00 in the Savings & Loan Association on the same day. (These discrepancies of $500.00 each in the handling by appellant of the funds, which occurred within a period of twenty-two days, offset each other.) On December 4, 1951, testator withdrew from his deposit account the sum of $400.00, which was used for repairs of his house. And on December 31, 1953, the additional sum of $500.00 was withdrawn by appellant by authority of testator and was used for their living expenses. The balance, $18,000.00, remained on deposit in the association to the credit of testator until his death.

The foregoing facts, as to which there is no dispute of consequence between the parties, show that the proceeds of the sales by testator of his land were traced and identified, and consisted at his death of the house and lot in the City of Greenville and the remainder of his deposits in the Savings & Loan Association. The proceeds were segregated by appellant and preserved by him except the relatively small amount of $957.60, which was used by him and his wife; there was no commungling of them with his other funds.

This action was brought for construction of the will; testator's heirs at law and all possible beneficiaries under the terms of the will are parties. It resolved itself into a contest between the widow and the others, she contending that the devise of the land was adeemed by testator's sales of

it in his lifetime and that she is entitled to the money in the Savings & Loan Association under the bequest to her of personal property and that the city house and lot, not mentioned in the will because acquired afterward, is intestate property to which she is entitled to one-half undivided interest in fee as an heir at law of testator, there being no children. The decision of the trial court was adverse to her contentions and it was held that the remainder of the Savings and Loan deposits and the city house and lot are the proceeds of the sales by testator of his land, and passed under Item VI of the will, quoted above, whereunder the widow has a life estate therein.

She has appealed and her first contention is that the provision of the will in respect to sale of "any" of testator's real estate is inoperative because he sold all of it. There is no merit in this position. The intention of the testator governs and it seems quite plain that in the use of the word "any" it was intended to also mean "all". This is not an unusual use and meaning of the word. 3 C. J. S., p. 1400. 3A Words & Phrases, Any, 53. *Pursley v. Inman,* 215 S. C. 243, 54 S. E. (2d) 800. *Cf. Brown v. National Surety Corp.,* 207 S. C. 462, 36 S. E. (2d) 588, and cases cited. Appellant cites Webster's New International Dictionary; the Second Edition, Unabridged, 1939, gives as the first definition of the adjective "any" that quoted by appellant in her brief, *viz.,* "one indifferently out of a number"; but the second definition found there is, "one or all (or, as plural, some) indiscriminately of whatever quantity."

Appellant's other questions will also have to be answered contra to her contentions. They will be disposed of, except the last, without separate reference to them.

*Gist v. Craig,* 142 S. C. 407, 141 S. E. 26, is dispositive of the main contention, which is that the devise contained in the will was adeemed in *toto.* In that case the testatrix bequeathed to Epworth Orphanage the proceeds of the collections of notes and mortgages owned by her, which the

executors were directed to collect and pay over to the orphan-age. The notes and mortgages were collected by the testatrix after the execution of the will and for the funds she obtained two certificates of deposit in a bank. The identity of the funds was established by the evidence, as in the case in hand. It was held that the legacy was not adeemed and the Orphan-age was entitled to the certificates of deposit. The later case of *Stanton v. David,* 193 S. C. 108, 7 S. E. (2d) 852, which is cited by appellant here, is not in conflict. Land de-vised by the will of testator in that case was sold by him in his lifetime and the proceeds of the sale were not segre-grated but were deposited in bank together with his other funds and expended as he saw fit. There was no segregation of the funds, as in the case at bar, and therefore identification of the proceeds of the sale was impossible. Moreover, there was no provision in the will for the disposition of the pro-ceeds of anticipated sale in consonance with the devise, as in the instant case. Another case of contrary result to the *Gist case* and to this is *Rogers v. Rogers,* 67 S. C. 168, 45 S. E. 176, 100 Am. St. Rep. 721, where a specific legacy was held to have been adeemed; but the will there did not dispose of the proceeds of the subject of the legacy, which were collected by the testator. Numerous supporting author-ities were cited in the opinion in *Gist v. Craig, supra,* to which reference may be had. Others are collected in the annotation in 165 A. L. R. 1032, in which *Gist v. Craig* is digested.

In the case at bar the scheme and content of the will ██ make quite clear the intention of the testator that his widow should have a life estate in his land and that in the event of his sale of any or all of it prior to his death, she should have a life estate in the proceeds of the sale or sales, and no more. He followed his intention by depositing the proceeds of his sales in a savings and loan institution and thereafter used a portion to purchase a city home for himself and his wife, which latter thereby also became subject to the terms of his will. The authorities are

not uniform, as is seen by reference to the above cited annotation, but we think our rule of *Gist v. Craig, supra,* is sound, and, as applied to the facts of that case and to the facts of this, is in conformity with the manifest intent of the testators in both cases. It accords with the view of Professor Page. The following is from 4 Page on Wills, Lifetime Edition, 384, Ademption, Sec. 1528:

"If the terms of the will show that testator contemplates some change in the form of the gift, or even a sale and reinvestment of the proceeds, and that he intends to pass the proceeds, or the property in which the proceeds are reinvested, to the original beneficiary, full effect will be given to such provision. If the will provides that the devisee shall have a home upon the property which testator owns at his death, the sale of the farm which testator then owned, and the reinvestment of the proceeds in a house in town, does not operate as an ademption. * * * If testator gives the 'proceeds' of certain property, and it appears, from the terms of the will, that he gives such proceeds even if the property is sold in his lifetime, the beneficiary may have the proceeds as far as they can be traced."

See also, 57 Am. Jur., Wills, Secs. 1586, 1595, and 69 C. J. 1014, Wills, Sec. 2217(8).

Ademption here occurred only with respect to the comparatively small amount of the proceeds of the sales by testator which was consumed by him and his wife during his lifetime for their needs—repairs of their residence and living expenses. It is therefore a case of partial ademption.

The terms adeem and ademption have been used by court and counsel in this case as applicable to legacies and devises, which is contrary to the early cases where the doctrine which they denote was held applicable only to bequests, not devises. 1 Bouvier, Rawle's 3rd Revision, 134. 69 C. J. 1001, Wills, sec. 2201. *Allen v. Allen,* 13 S. C. 512, 36 Am. Rep. 716. *Godbold v. Vance,* 14 S. C. 458. Cf. *Hunter v. Mills,* 29 S. C. 72, 6 S. E. 907, 911, where it was said:

"It seems to us that, somewhat like an 'adeemed' legacy, it [a devise] must simply go out of the will." However, apparently beginning in this country with the case of *Hansbrough's Ex'rs v. Hooe,* 12 Leigh 316, 39 Va. 316, 37 Am. Dec. 659, later decisions have applied the doctrine *eo nomine* to devises of realty as well as bequests of personalty. But in the case at bar there was no ademption, except in part, in either of the meanings of the term because, perforce Item VI of the will and the segregation by testator of the funds derived from the sales of his lands, the gift was not taken away. The terms are derived from the Latin, ademptio, which means a taking away.

Since it is held that the city house and lot is a part of the proceeds of the sale of testator's farm and passes, as such, to appellant for life under Item VI of the will, it is unnecessary to determine whether it might be held to be embraced within appellant's real estate, devised by Item IV, because the estates thereby devised to appellant and the remaindermen are the same as those bequeathed by Item VI. As to this presently academic question we intimate no opinion.

Appellant lastly imputes error to the trial court in refusing to strike from the record testimony of the brother of the testator, who was also executor of the will, to the effect that testator deposited in the Savings & Loan Association the identical funds which he received from his first land sale. There is no need to explore the grounds of appellant's objection to the testimony because, in view of the other evidence, it could not have been prejudicial. After the admission of this testimony, the check which was given to testator was placed in evidence and it showed that it was delivered by him to the Savings & Loan Assocation which endorsed, collected it and gave testator deposit credit for the proceeds of it. This brother of testator and executor of his will appears to have been his adviser in all of the transactions involved in the litigation and was present at them.

The judgment is affirmed.

TAYLOR, OXNER and LEGGE, JJ., concur.

Moss, J., disqualified.