DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment in favor of appellees[1] on their motion to enforce a settlement agreement against CertainTeed Corporation, defendant below and appellant herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
"The court of common pleas erred by refusing to order arbitration of the dispute over the liability of appellant Certainteed Corporation for amounts allocated to but unpaid by another party to the settlement agreement, where the settlement agreement requires arbitration of `any disputes that may arise while carrying out the terms and conditions of this agreement.'"
SECOND ASSIGNMENT OF ERROR:
"The court of common pleas erred by entering judgment against appellant Certainteed Corporation for amounts allocated to but unpaid by another party to the settlement agreement, where the settlement agreement unambiguously both states that each party thereto, including Certainteed Corporation, `shall be liable under this settlement agreement only for its individual share' of the settlement payments and bars the appellees-plaintiffs from seeking to hold certainteed corporation liable for any other company's unpaid share."
 {¶ 2} Appellees are part of a group of 1,185 plaintiffs who brought asbestos related lawsuits against various companies in a number of states, including Ohio. Appellant is a member of the Center for Claims Resolution (CCR) which is a non-profit company created in 1988 by various asbestos producers, including appellant and Armstrong World Industries (Armstrong), to handle asbestos related litigation.[2] Relations between CCR and its members are governed by a "Producer Agreement Concerning Center for Claims Resolution" (Producer Agreement) which specifies, among other things, that CCR acts as sole agent for its member companies with respect to "settlement, payment or defense of all asbestos-related claims" against those members.
 {¶ 3} On June 11, 2000, appellees and CCR entered into a Settlement Agreement which called for each appellee to be paid $2,500 (for a total of $20,000)in settlement of their claims.[3] Later that year, Armstrong filed bankruptcy and did not fund its share of those proceeds. On February 15, 2001, CCR sent a check to appellees for $10,426.72 representing the amount of the settlement, less the share owed by Armstrong. Appellees negotiated that check.
 {¶ 4} On March 20, 2001, appellees asked the trial court to enforce the previous Settlement Agreement and to order appellant to pay them the remaining $9,573.28 due under the agreement. Appellant filed a Notice of Removal to remove the matter to the United States District Court on grounds that appellant had a right of indemnification against Armstrong for any recovery by appellees, thus affecting Armstrong's bankruptcy and giving the federal courts jurisdiction under Section 1452(a), Title 28, U.S.Code. On July 17, 2001, the District Court declined to accept jurisdiction and returned the case to the Scioto County Common Pleas Court.
 {¶ 5} Subsequently, appellant filed a motion to stay the proceedings and to compel arbitration of appellees' claim. Appellant's motion was based on a provision in the Settlement Agreement that called for the submission of disputes to binding arbitration. Appellant argued that this provision, as well as the requirements of the Federal Arbitration Act, codified at Section 1 et seq. of Title 9, U.S. Code (FAA), mandated a stay of appellees' motion to enforce the Settlement Agreement and a submission of their claims to arbitration. Appellees argued that nothing should be submitted to arbitration because the Settlement Agreement is unambiguous and required appellant to pay the remainder of the settlement proceeds.
 {¶ 6} The trial court filed its decision and judgment entry on August 26, 2002, and found in favor of appellees. Although the Settlement Agreement had a broad arbitration provision subject to enforcement under the FAA, the trial court held that the Settlement Agreement's unambiguous language allowed appellees to enforce the terms of the settlement against the remaining parties to the agreement (i.e. appellant). Thus, the trial court refused to send the matter to arbitration and further ordered appellant to pay the balance of the $2,500 settlement to each appellee.[4]
This appeal followed.[5]
 I {¶ 7} Before we review the merits of appellant's assignments of error, we first pause to consider the appropriate standard of review. The trial court's August 26, 2002 judgment enforced the Settlement Agreement. Because this matter is, in essence, a question of contract law, we must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. Continental W.Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc. (1996),74 Ohio St.3d 501, 502, 660 N.E.2d 431. We thus afford no deference whatsoever to the trial court's decision and conduct our own independent review to ascertain whether the trial court properly enforced the Settlement Agreement. Id.; also see Leonhart Gas Oil, Inc. v.Boyer (Apr. 4, 2000), Richland App. No. 99CA69-2; Route 46 Development,Inc. v. Sharpe (Jun. 24, 1999), Mahoning App. No. 98CA154.
 {¶ 8} Appellees note in their brief, however, that appellate courts typically apply an abuse of discretion standard when reviewing trial court decisions on motions to stay proceedings and refer a matter to arbitration. See e.g. Carter Steel Fabricating Co. v. DanisBldg. Constr. Co. (1998), 126 Ohio App.3d 251, 254, 710 N.E.2d 299;Harsco Corp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406, 410,701 N.E.2d 1040; Giltner v. Mitchell, Summit App. No. 21039, 2002-Ohio-5771, at ¶ 11. They assert that we should, likewise, apply an abuse of discretion standard in the instant case at least to that part of the trial court's judgment which denied the request to stay the proceedings and to compel arbitration of this dispute.[6] We are not persuaded.
 {¶ 9} The case sub judice is distinguishable from the cases that appellees cite because the judgment herein did not simply deny appellant's motion to compel arbitration. Rather, the trial court denied the motion in the larger context of construing and enforcing the Settlement Agreement. This brings us within the ambit of Continental Condominium, supra. We further note that when courts review orders that enforce settlement agreements, the Ohio Supreme Court, as well as other appellate courts, have rejected the application of the abuse of discretion standard. See Continental Condominium, supra at 502; also see NorthHampton Day Care Learning Center, Inc. v. Ohio Dept. of HumanServices (Apr. 4, 1997), Clark App. No. 96-CA-20. Thus, we will review the trial court's August 26, 2002 judgment to determine if the court erred as a matter of law, not whether the court abused its discretion.
 II {¶ 10} Appellant asserts in its first assignment of error that the trial court erred by denying its motion to compel arbitration. We agree with appellant.
 {¶ 11} Our analysis begins with paragraph eleven of the Settlement Agreement which states, inter alia, as follows:
"It is agreed that the parties will make good faith efforts to resolveany disputes that may arise while carrying out the terms and conditions of this Agreement. If the parties are unable to resolve a dispute, the issue shall be referred to a mutually agreeable arbitrator for binding resolution." (Emphasis added.)
 {¶ 12} The FAA mandates that a written arbitration provision in a contract involving interstate commerce shall be "irrevocable and enforceable." Section 2, Title 9, U.S.Code.[7] Moreover, the FAA creates a body of substantive federal law to apply to determine whether parties to an arbitration provision must submit their dispute to binding arbitration. Allied-Bruce Terminix Cos., Inc. v. Dobson (1995),513 U.S. 265, 271, 115 S.Ct. 834, 130 L.Ed.2d 753; Moses H. Cone Hospitalv. Mercury Construction Corp. (1983), 460 U.S. 1, 24, 103 S.Ct. 297,74 L.Ed.2d 765. These laws are indicative of a federal policy favoring arbitration agreements. Moses H. Cone Hospital, supra at 24; VoltInformation Services, Inc. v. Bd. of Trustees of Stanford Univ. (1989),489 U.S. 468, 475-476, 109 S.Ct. 1248, 103 L.Ed.2d 488.
 {¶ 13} Appellant argues that, as a matter of federal law, the FAA requires that any doubt concerning the scope of arbitrable issues must be resolved in favor of arbitration, irrespective of whether the problem is construction of the contract language itself or other matters. See MosesH. Cone Hospital, supra at 24-25; Mastrobuono v. Shearson Lehman Hutton,Inc. (1995), 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76, at fn. 8. By the same token, however, reference to arbitration can be denied in those instances when it can be said with "positive assurance" that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. ATT Technologies, Inc. v. Communications Workersof America (1986), 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648;United Steel Workers v. Warrior Gulf Navigation Co. (1960),363 U.S. 574, 582-583, 80 S.Ct. 1347, 4 L.Ed.2d 1409.
 {¶ 14} In the case at bar, the trial court focused on the latter principle and concluded that the contract is unambiguous and provides for appellees to enforce the entire settlement amount against appellant. We, however, believe that the trial court erred in that determination.
 {¶ 15} First, we agree with appellant that the Settlement Agreement's arbitration clause is sufficiently broad to cover this dispute. The question of whether a dispute is arbitrable under an arbitration provision is a legal question for the courts, rather than a question for the arbitrators. ATT Technologies, supra at 649; Intl.Union of Operating Engineers v. Flair Builders, Inc. (1972), 406 U.S. 487,491, 92 S.Ct. 1710, 32 L.Ed.2d 248; John Wiley Sons, Inc. v.Livingston (1964), 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898. When deciding whether parties agreed to arbitrate a certain matter, courts generally apply ordinary state-law principles that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan (1995),514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985; also see Perry v.Thomas (1987), 482 U.S. 483, 492-493, 107 S.Ct. 2520, 96 L.Ed.2d 426, at fn. 9. The parties intent governs what claims are arbitrable pursuant to an arbitration agreement, and courts must look to the wording of the agreement itself and give effect to every provision to determine that intent. Paladino v. Avnet Computer Technologies, Inc. (C.A. 11 1998),134 F.3d 1054, 1061. With all of this in mind, we turn our attention to the parties' Settlement Agreement arbitration provision.
 {¶ 16} We note, that arbitration provision in question calls for the parties to "make good faith efforts to resolve any dispute that may arise" while carrying out the Settlement Agreement and, if the parties are unable to resolve such dispute, it will be submitted to binding arbitration. (Emphasis added.) We believe that the key phrase is "any dispute." We have found nothing in the Settlement Agreement to define this phrase, or to elaborate on the scope of the arbitration provision. Thus, we must determine the parties' intent in using that language.
 {¶ 17} Paragraph nineteen of the Settlement Agreement states that any dispute concerning the "interpretation or performance" of the agreement shall be resolved in accordance with the laws of South Carolina. Thus, we turn to South Carolina law to define the phrase "any dispute." Although we have found no case law to interpret that particular phrase, the South Carolina Supreme Court has construed the word "any" to mean "all" or "every." See e.g. Watson v. Watson (S.C. 1956),95 S.E.2d 266, 268; Pursley v. Inman (S.C. 1949), 54 S.E.2d 800,802.[8] Applying that definition in the instant case, the phrase "any dispute" apparently means "all" or "every" dispute arising under the Settlement Agreement. This clearly encompasses the parties' varying interpretation of the Settlement Agreement and the course of action now that Armstrong has not paid its share of the settlement proceeds. We thus conclude that the matter should have been referred to arbitration pursuant to the parties' agreement.
 {¶ 18} Our holding is buttressed by a review of other cases that involve similar language. The United States Supreme Court has indicated that the interpretation of a clause in a collective bargaining agreement is subject to arbitration under a provision that calls for submission of "all grievances" to arbitration. See Nolde Bros. Inc. v. Local No. 358,Bakery Confectionary Worker's Union (1977), 430 U.S. 243, 249-250,97 S.Ct. 1067, 51 L.Ed.2d 300. If the interpretation of contract language was an arbitrable matter in that case, it is difficult to imagine why the interpretation of the settlement agreement at issue herein should not be submitted to arbitration under a similarly worded clause.[9]
 {¶ 19} The Second Circuit Court of Appeals has held on several occasions that a provision that calls for the arbitration of "any controversy or claim" between parties arising out of an agreement is so broad that it justifies a "presumption of arbitrability." See Mehler v.Terminix Intl. Co. L.P. (C.A.2 2000), 205 F.3d 44, 49-50; Oldroyd v.Elmira Savings Bank, FSB (C.A.2 1998), 134 F.3d 72, 76-77. The Eleventh Circuit Court of Appeals held that a clause that provides for the arbitration of "any controversy or claim" means all claims. SeePaladino, supra at 1061. Similarly, we have found many lower federal court decisions that have afforded broad interpretations to the phrase "any dispute." See e.g. Nelson v. Insignia/ESG, Inc. (D.C. 2002),215 F. Supp.2d 143, 158; Myrick v. GTE Main Street Inc. (D.Mass. 1999),73 F. Supp.2d 94, 95-96; Bosinger v. Phillips Plastics Corp. (S.D.Cal. 1999), 57 F. Supp.2d 986, 993; Topf v. Warnaco, Inc. (D.Conn. 1996),942 F. Supp. 762, 769-770.
 {¶ 20} This authority convinces us that the phrase "any dispute," as used in the arbitration clause of the parties' Settlement Agreement, should be accorded a broad interpretation and should be read to include "every" dispute arising thereunder. In light of this interpretation, we conclude that the disagreement over how to proceed with the settlement now that Armstrong has declared bankruptcy falls under that clause and should be arbitrated. Because the parties have agreed that "every" claim or "all" claims are to be arbitrated, it makes no difference that this is a general provision and that a more specific provision exists elsewhere in the agreement.[10] By virtue of the language used in the parties' agreement, the parties intended for every dispute to be arbitrated. We are required to give effect to that intent.[11]
 {¶ 21} Our second reason for concluding that the trial court erred by not ordering arbitration of this matter is that, unlike the trial court, we believe that the Settlement Agreement's language is unambiguous. The trial court based its conclusion on paragraph seven of the Settlement Agreement which states, inter alia, as follows:
"Payments to Plaintiff Counsel by the CCR under Paragraph 5 of this Settlement Agreement shall be funded by the CCR member companies in accordance with the terms of the Producer Agreement Concerning Center for Claims Resolution (as amended, effective February 1, 1994) and each CCRmember company shall be liable under this Settlement Agreement only forits individual share of such payments as determined under that ProducerAgreement. In the event that the CCR fails to make any of the payments pursuant to paragraph 6 because any one of the CCR member companies fails to make timely payment of its individual share of such payment when such payment has become due in accordance with all of the terms of the Settlement Agreement (a "Default"), Plaintiff Counsel shall have, with respect to any and all Plaintiffs whose claims have not been paid in full by the CCR under this Agreement as of the date of the Default, the option of either (a) continuing the settlement as to the non-Defaulting CCR member companies; or (b) declaring this Settlement Agreement null and void as against all CCR member companies. * * * If Plaintiff Counselelects to continue the settlement as to the non-defaulting CCR membercompanies, then as to the defaulting CCR member only, any and allplaintiffs whose claims have not been paid in full by the CCR under thisAgreement shall have the option of (a) electing to enforce the DefaultingCCR member company's obligations under this Settlement Agreement or (b)electing to pursue such plaintiffs claims for asbestos-related injuryagainst the Defaulting CCR member company in the tort system[.] " (Emphasis added.)
 {¶ 22} The first portion of the paragraph highlighted above provides that "each CCR member company shall be liable . . . only for itsindividual share of such payments as determined" by the Producers Agreement. This suggests that appellant cannot be held liable for anything more than that initially allocated to it by the CCR. However, if we turn to the Producer Agreement referenced in that paragraph, we find the following language:
"In the event that a Participating Producer shall withdraw from membership in the Center pursuant to Section IV of the Agreement or haveits membership terminated pursuant to Paragraph 3 of Section III, thecorresponding shares of the other Participating Producers shall beincreased appropriately to pick up the shares of the withdrawing orterminating Participating Producer. " (Attachment A, § F) (Emphasis added).
The Producer Agreement further provides that, in the event of a producer declaring bankruptcy, as was the case with Armstrong, the producer's membership is terminated. (§ 3, ¶ 2(b)). These two provisions suggest that appellant's share of the settlement proceeds would increase proportionately with Armstrong's bankruptcy. On the other hand, the Agreement also provides that "notwithstanding termination of membership, a Participating Producer shall continue to have and to honor all of the obligations incurred by it hereunder or on its behalf as a member prior to the effective date of its membership termination . . ." (§ 3, ¶ 3). This portion suggests that Armstrong would continue to be liable for its share of the settlement proceeds regardless of its bankruptcy and termination of membership in CCR.[12] We believe that these provisions are ambiguous as to the respective rights and liabilities of the parties now that Armstrong has declared bankruptcy.
 {¶ 23} We are also not persuaded by the trial court's interpretation of paragraph seven as providing appellees a remedy against appellant as a defaulting party. Paragraph seven explicitly defines a "default" as when one "of the CCR member companies fails to make timely payment of its individual share of such payment when such payment has become due." It appears to us, from our review of the record, that the party in default of payment is Armstrong, not appellant. A "declaration" by Joseph Jordan, Chief Financial Officer for CCR, was filed during the course of the proceedings below and sets out the following information:
"7. The Producer Agreement makes each member company responsible for its individual share of each liability payment attributable to each claim handled by the CCR as sole agent for each member, according to the shares established under the terms of the CCR Producer Agreement. The settlement agreements negotiated by the CCR, in turn, make each CCR member liable for its share of the settlement as allocated by the CCR. The CCR and its members interpret the settlement agreements that the CCR negotiates on behalf of its member companies as creating separate, rather than joint, liability among the member companies. Plaintiffs' counsel generally understands that the CCR's member companies pay shares of the settlements according to the CCR's allocation arrangements.
"* * *
"10. The CCR exists solely for the purpose of handling and administering claims on behalf of its members. * * * The CCR acts as a conduit for the payment by its members (and/or their insurers) of claims asserted against them. It receives funds from its members under an obligation to pay those funds to plaintiffs in settlement of claims settled by the CCR acting as agent for its members. Thus, unless its members pay their shares, the CCR is simply unable to pay the settlement amounts due from its members to the plaintiffs.
"* * *
"14. Armstrong World Industries, Inc. ("Armstrong") was a CCR member since the inception of the CCR in 1988. Armstrong was a CCR member when the June 2000 settlement agreement at issue in this case was entered into. On December 6, 2000, Armstrong filed a petition for bankruptcy in Delaware federal court, and has stopped funding its share of settlementagreements that the CCR had negotiated on its behalf. Nonetheless, under the Producer Agreement, Armstrong continues to have the obligations it incurred for settlements negotiated prior to its bankruptcy" (Emphasis added.)
 {¶ 24} Likewise, in a letter attached as an exhibit to appellees' motion to enforce the Settlement Agreement, a letter from CCR states that Armstrong had declared bankruptcy and "stopped paying its share of previously negotiated settlements." If the Settlement Agreement defines a "defaulting" party as a producer which does not pay its share of settlement proceeds to CCR, as the aforementioned language in paragraph seven suggests, the only of evidence of a default in this case (considering both the letter and Jordan's declaration) is against Armstrong. Thus, appellees would have recourse against Armstrong pursuant to paragraph seven, but not against appellant.
 {¶ 25} We recognize that the both the trial court and appellees have a different interpretation of these provisions. We also believe that a differing interpretation is reasonable in light of the agreement's confusing language. We make no attempt at this juncture to resolve that confusion. This illustrates that an ambiguity exists with these provisions and we must once again turn to the law of South Carolina.
 {¶ 26} The primary objective in construing a contract is to ascertain and give effect to the intention of the parties. BarnacleBroadcasting, Inc. v. Baker Broadcasting, Inc. (S.C.App. 2000),538 S.E.2d 672, 675; Chan v. Thompson (S.C.App. 1990), 395 S.E.2d 731,734; Rentco v. Tamway Corp. (S.C.App. 1984), 321 S.E.2d 199, 201. The parties' intent must first be derived from the language of the contract itself. C.A.N. Enter. Inc. v. South Carolina Health Human Servs.Fin. Comm'n. (S.C. 1988), 373 S.E.2d 584, 586; also see Southern AtlanticFin. Serv., Inc. v. Middleton (S.C.App. 2002), 562 S.E.2d 482, 484;Heins v. Heins (S.C.App. 2001), 543 S.E.2d 224, 230. If a contract's language is plain, unambiguous and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect. Jordan v. Security Group
(S.C. 1993), 428 S.E.2d 705, 707; Connor v. Alvarez (S.C. 1985),328 S.E.2d 334, 336. However, if a contract is ambiguous, evidence may be adduced to show the intent of the parties in entering that contract.South Carolina Dept. of Nat. Res. v. McClellanville (S.C. 2001),550 S.E.2d 299, 303; also see Southern Atlantic Fin. Serv., Inc., supra at 485. Ascertaining the parties intent is then a factual determination to be made by the trier of fact. See Soil Remediation Co. v. Nu-WayEnviron., Inc. (S.C. 1997), 482 S.E.2d 554, 555; Café Assoc.,Ltd. v. Gerngross (S.C. 1991), 406 S.E.2d 162, 164.
 {¶ 27} A contract is ambiguous under South Carolina law when its terms are reasonably susceptible to more than one interpretation. SouthCarolina Dept. of Nat. Res., supra at 302; Penton v. J.F. Cleckley Co. (S.C. 1997), 486 S.E.2d 742, 745; Farr v. Duke Power Co. (S.C. 1975), 218 S.E.2d 431, 433. This is a question of law for the courts to decide. Hawkins v. Greenwood Dev. Corp. (S.C.App. 1997), 493 S.E.2d 875,878; Hope Petty Motors of Columbia, Inc. v. Hyatt (S.C.App. 1992),425 S.E.2d 786, 789. As we noted earlier, we believe that the Settlement Agreement and Producer's Agreement are susceptible to more than one interpretation. This makes the determination of the parties' intent a question of fact to be determined by the trier of fact and, in our opinion, comes under the rubric of "any dispute" as set forth in the Settlement Agreement's arbitration clause. Accordingly, we conclude that the matter should be sent to arbitration to determine the parties' intent.
 {¶ 28} To summarize, we reverse the trial court's judgment for two reasons. First, we find that the arbitration provision providing for arbitration of "any dispute" is sufficiently broad to encompass this matter. Second, we conclude that the provisions of the Settlement Agreement and Producer Agreement are sufficiently ambiguous that this matter comes down to determining the parties' intent when entering into these contracts, which we also conclude constitutes an arbitrable dispute under the Settlement Agreement's arbitration clause.
 {¶ 29} We also note that nothing in this opinion should be construed as criticism for the manner in which the trial court decided this matter. The August 26, 2002 judgment demonstrates a considered effort to resolve a very complex disagreement arising out of a convoluted contract. We simply come to a different conclusion under a de novo standard of review.
 {¶ 30} In any event, for the foregoing reasons, appellant's first assignment of error is well-taken and is hereby sustained.
 III {¶ 31} Appellant argues in its second assignment of error that the trial court erred in its interpretation of paragraph seven of the Settlement Agreement by holding it liable for the share of the proceeds owed by Armstrong. In view of our ruling on the first assignment of error (that the interpretation and application of the Settlement Agreement are issues to be resolved in arbitration) this assignment of error has been rendered moot and will be disregarded pursuant to App.R. 12(A)(1)(c). We emphasize, however, that nothing in our discussion of the first assignment of error should be construed as having passed on the proper interpretation of the Settlement Agreement. Rather, we hold that those provisions are reasonably susceptible to more than one interpretation and that the proper interpretation should be made during arbitration.
 {¶ 32} Having sustained appellant's first assignment of error, the judgment of the trial court is hereby reversed and the case is remanded to the trial court for an order pursuant to Section 3, Title 9, U.S.Code[13] to stay proceedings pending resolution of arbitration.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed, that the cause be remanded for further proceedings consistent with this opinion and that appellant recover of appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] Appellees are Joseph Florest Cales, Patterson Jeannie Cline, Shirley Dillow (both individually and as the Executrix of the Estate of Earl Dillow, deceased), Albert Fenton, Carl Helen Merritt, Robert Ida Schuyler, Henry Shear and John Stephenson.
[2] Fourteen other asbestos companies, in addition to appellant and Armstrong, belonged to CCR at the time of the settlement.
[3] These exact dollar amounts are not expressly set out in the Settlement Agreement. Rather, the agreement sets forth a convoluted and formulaic method for arriving at the precise settlement amount. Nevertheless, these are the figures used by the parties in their pleadings and we accept them for purposes of our review.
[4] The trial court did not specifically award appellees the $9,573.28 they requested in their original motion, but each side interprets the August 26, 2001 judgment as making such an award. We will do the same for purposes of our review.
[5] The August 26, 2001 judgment is an order made on a summary application in an action after judgment. We have jurisdiction to review it under R.C. 2505.02(B)(2). We also note that although appellees requested attorney fees in their motion to enforce the settlement agreement, the court did not address their request in its judgment. We will treat that as a sub silento denial of those fees. See generally Takacs v. Baldwin
(1995), 106 Ohio App.3d 196, 209, 665 N.E.2d 736; also see State v. Todd
(Aug. 9, 1996), Pickaway App. No. 96CA01; State v. Seymour (Nov. 9, 1993), Pickaway App. No. 90CA38. If, however, the trial court had indicated that it intended to address those fees at a later time, the judgment would not be final and appealable and we would not have jurisdiction to review this case.
[6] The abuse of discretion standard is considerably more deferential than simply inquiring whether the trial court "erred" in its decision. Generally, an abuse of discretion requires more than an error or law or judgment. Rather, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v. Courtyard by MarriottL.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; State ex rel.Solomon v. Police Firemen's Disability Pension Fund Bd. ofTrustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. When applying this standard, appellate courts are admonished that they must not substitute their judgment for that of the trial court. See State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254;In re Jane Doe 1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
[7] The trial court held in the instant case, and both parties agree in their brief, that the Settlement Agreement's arbitration provision is subject to enforcement under the FAA. Although no one has expressly addressed the "interstate commerce" question in this case, we note that a settlement agreement is nothing more than a contract to end litigation. See Spercel v. Sterling Industries (1972), 31 Ohio St.2d 36, 38-40,285 N.E.2d 324; also see Ostman v. St. John's Episcopal Hosp. (E.D.N.Y. 1996), 918 F. Supp. 635, 643; DiFrancesco v. Particle Interconnect Corp.
(Col. App. 2001), 39 P.3d 1243, 1247. An injured party essentially bargains away a claim of right to recover for injury in exchange for some sort of compensation. For all practical purposes, this is no different than a contract for sale of goods and services. Because the various parties to this agreement are located in different jurisdictions, we agree that such contract involves interstate commerce, thus bringing it under the auspices of the FAA.
[8] This is a typical definition for the phrase "any." See State v.Westling (Wash. 2002), 40 P.3d 669, 671 ("any" means "every" and "all");State ex rel. Porter v. Ferrell (Okla. 1998), 959 P.2d 576, 578 ("any" is equivalent and has the force of "every" and "all"); Central MonitoringService, Inc. v. Zakinski (S.D. 1996), 553 N.W.2d 513, 517 ("any" means "all" or "every"); Harward v. Virginia (Va. 1985), 330 S.E.2d 89, 91
("any" includes "all"); Motor Cargo, Inc. v. Bd. of Twp. Trustees (Comm. Pleas 1953), 67 Ohio Law Abs. 315, 320 ("any" is equivalent and has the force of "every" and "all"); also see Black's Law Dictionary (5th Ed. 1979) 86 (the word "any" has a diversity of meaning and may be employed to indicate "all" or "every").
[9] The Ninth Circuit Court of Appeals has ruled that a clause that provides for arbitration of "all disputes" arising in connection with a development agreement should be broadly construed to reach every dispute between the parties having a significant relationship with the contract and all disputes having their origin or genesis in the contract. SeeSimula, Inc. v. Autoliv, Inc. (C.A.9 1999), 175 F.3d 716, 720-721. Although the court admittedly focused on interpreting the phrase "arising in connection with," rather than the phrase "all disputes," this decision illustrates the expansive reading given to such a clause.
[10] In its August 26, 2002 judgment, the trial court based a part of its ruling on the finding that the specific remedies set out in paragraph seven of the settlement agreement (discussed infra in this opinion) controlled over the general arbitration clause in paragraph eleven. Although we take no particular issue with the court's general interpretation of the law, we believe that this argument has marginal relevance given the parties decision to submit "any" dispute to arbitration.
[11] Even if any doubt existed as to the applicability of the arbitration provision, we emphasize that federal law favors arbitration, see Moses H. Cone Hospital v. Mercury Construction Corp. (1983),460 U.S. 1, 24, 103 S.Ct. 297, 74 L.Ed.2d 765; Volt InformationServices, Inc. v. Bd. of Trustees of Stanford Univ. (1989), 489 U.S. 468,475-476, 109 S.Ct. 1248, 103 L.Ed.2d 488. Thus, any doubt as to whether parties intended for a dispute to be resolved by arbitration should be resolved in favor of arbitration. See Simula Inc., supra at 719; ConsumerConcepts, Inc. v. Mego Corp. (S.D.N.Y. 1978), 458 F. Supp. 543,544.
[12] In its August 26, 2002 judgment, the trial court found that appellees "were not aware" of how the settlement proceeds were being apportioned among CCR members and should not be bound by the terms of the Producer's Agreement. We disagree for two reasons. First, the Producer's Agreement is referenced directly in the Settlement Agreement. The appellees were aware of its existence and should have familiarized themselves with its provisions given that it affected the operation of the Settlement Agreement. Second, as noted above, some terms of the Producer's Agreement actually strengthen appellees' claims and were referenced in their motion to enforce settlement agreement. It is inconsistent to allow appellees to base their claim on those provisions but, at the same time, find that they were unaware of them and thus not bound by them.
[13] Section 3, Title 9, U.S. Code states that, if a case is brought in any court in the United States on an issue referable to arbitration under a written agreement providing for such arbitration, the court in which such suit is pending shall stay the proceedings until arbitration has been had in accordance with the agreement.